100 So.2d 398 (1958)
George KOERNER and Lisa Staude, Appellants,
v.
Reinhard BORCK et al., Appellees.
Supreme Court of Florida.
February 14, 1958.
*400 Stephen R. Magyar, Orlando, for appellants.
H.N. Roth, Orlando, for Reinhard Borck, as executor of the estate of Lina Downey, deceased.
Emory S. Akerman and Charles M. Everett, Orlando, for Elsie Koehler.
Akerman, Dial & Akerman, Orlando, for Orange County.
Gladstone L. Kohloss and Charles V. Silliman, Orlando, for Philippine Vogel and Martha McCain, formerly Martha McCullough.
ROBERTS, Justice.
This is an appeal from a declaratory decree entered in a suit filed by the appellee Borck, as executor of the last will and testament of Mrs. Lina Downey, deceased, against several defendants, including Mrs. Downey's next-of-kin (three nieces and a nephew) who are the appellants here. The decree here reviewed interpreted Items Three, Eight and Twelve of Mrs. Downey's will, and upheld the validity of the devise made by Item Three. On this appeal, the appellants question the propriety of the Chancellor's decree respecting Items Three and Eight.
Item Three devised a parcel of land to Orange County for its use as a county park and further provided as follows:
"The Church now located in the vicinity shall have the privilege of baptizing persons in the Lake and also the young people of the Church are not to be denied the privilege of swimming and bathing in the Lake."
The church referred to is the Downey Memorial Church (interdenominational). It is noted, as a matter of interest, that this church was built by Mrs. Downey in 1931 as a memorial to her deceased husband on land deeded by her to the church, and is separated from the lake by Highway 50 and a strip of land included in the acreage devised to the county. During her lifetime, Mrs. Downey gave verbal permission to the church and its young people to use her lake-front property across the road from the church for baptisms and for swimming.
The Chancellor's decree respecting Item 3, insofar as is here pertinent, reads as follows:
"4. Item Three is a devise to Orange County, Florida, in fee simple subject to the easements hereinafter described of the land therein described so long as the County shall use said land as a County Park. The ownership of said land by the County is subject to a perpetual easement in favor of Downey Memorial Church (Inter-Denominational) to use the lake on the property devised for baptismal purposes. The use of the lake for baptizing by a specific Church is a proper public use and is not in any way in conflict with the public use of the lake by the County for a County Park, and further, would not require the expenditure of public funds by the County for maintaining said property as a public *401 park in violation of Section 6 of the Declaration of Rights of the Florida Constitution, or the provisions of the Constitution of the United States. * * * Orange County has full and complete authority to take and acquire land by devise for purposes of a public park and to operate and maintain a public park though specific legislation granting such authority is lacking. The easement of Downey Memorial Church (Inter-Denominational) as well as the remainder to the heirs of Lina Downey at such time as the property may cease to be used as a County Park, do not in any way constitute adverse claims against which the title would require protection by the County."
We will first consider appellants' contention that the County cannot, consistently with the "establishment of religion" clause of the First Amendment to the federal constitution, accept a devise of land for its use as a county park where the devise carries with it a perpetual easement to use the land and the lake adjacent thereto for baptismal purposes.
The First Amendment, as made applicable to the States by the Fourteenth, Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 891, 87 L.Ed. 1292, commands that a state "shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." From the broad interpretation given to this Amendment by the United States Supreme Court has evolved the principle of separation of Church and State. "In the words of Jefferson, the clause against establishment of religion by law was intended to erect `a wall of separation between Church and State.'" Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711, 512, citing Reynolds v. United States, 98 U.S. 145, at 164, 25 LEd. 244. In the Everson case, it was held that this principle was not violated by the State of New Jersey when it provided for the payment, from tax-raised funds, of the bus fares of parochial school pupils as a part of a general program under which it paid the fares of pupils attending the public schools. But see People of State of Illinois ex rel. McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 648, 2 A.L.R. 2d 1338, in which the court held that an Illinois board of education could not provide for religious instruction to students during school hours in cooperation with a local association of churches. Obviously, neither of these decisions is in point on the facts; and we find nothing in the general statements contained therein to support appellants' contention.
"Baptizings" in the public lakes and streams of this country are a colorful part of its early religious history. Since the innovation of the baptistery as a part of the church plant for those denominations baptizing by immersion, this practice is not as common as before. But it still exists; and, until now, no one to our knowledge has ever seriously contended that to permit baptism in a public lake or stream does violence to the mandate of the First Amendment. Such permission is clearly not "an establishment of religion", in the words of the Amendment; nor do we think it does violence to the principle of separation of church and state as enunciated by the United States Supreme Court in the cases cited above and here relied upon. On the contrary, to hold that the Amendment is an absolute prohibition against such use of public waters would, in effect, prohibit many religious groups from carrying out the tenets of their faith; and, as stated in Everson v. Board of Education, supra, 67 S.Ct. 504, 505, "State power is no more to be used so as to handicap religions, than it is to favor them."
The fact that the use of the lake for baptismal purposes is coupled with a perpetual right of ingress and egress over county-owned land to reach the lake does not require a different conclusion. See Fenske v. Coddington, Fla. 1952, 57 So.2d 452, *402 holding valid as against a similar attack a conveyance of property to the Board of Public Instructions of Orange County, the deed reserving for use as a chapel for religious worship a portion of the property conveyed, together with a right of ingress and egress to and from the chapel over the property conveyed to the county.
Nor is the Chancellor's decree amenable to the attack here made under Section 6 of the Declaration of Rights of the Florida Constitution, F.S.A., prohibiting the expenditure of public funds, directly or indirectly, in aid of any church, sect, religious denomination, or sectarian institution. Here, as in Fenske v. Coddington, supra, 57 So.2d 452, any improvement to the county-owned land will be made for the benefit of the people of the county and not for the church. This contention cannot, therefore, be sustained.
The appellants also contend that a county has no authority to accept a devise or grant of land for park purposes in the absence of specific legislation granting such authority. This contention is without merit. In Duval County v. Bancroft, 1928, 96 Fla. 128, 117 So. 799, 800, a majority of this court held that the county commissioners of Duval County could accept a park dedication made in 1921 "under their general express and implied statutory powers and authority as the chief administrative and fiscal officers for the county." But there is now no lack of specific legislative authority to do so.
In 1925, by Sec. 6 of Ch. 10277, Laws of 1925, the counties of this state were specifically authorized "to acquire by gift, devise, or purchase out of general funds * * * any lands which are suitable for public parks or for the preservation of natural beauty or places of historic association, and operate the same as public parks." By Ch. 17025, Laws of 1935, the duty to establish and maintain parks was transferred from the Trustees of the Internal Improvement Fund to the Florida Board of Forestry, and Ch. 10277, supra, was repealed; but the 1935 Act re-enacted verbatim, as Sec. 4 thereof, Sec. 6 of Ch. 10277, Laws of 1925, supra. In compiling and revising the statutes of this state into the Florida Statutes 1941, the revisers consolidated Secs. 4, 5 and 6 of the 1935 Act into Sec. 589.24, Fla. Stat. 1941. The consolidation carried forward the exact language of Sec. 4 of Ch. 17025 and Sec. 6 of Ch. 10277, granting to counties the authority referred to and quoted above; and it goes without saying that neither the revisers, in making the consolidation, nor the Legislature, in adopting the revision, intended to abrogate the authority granted to the counties by the 1925 and 1935 Acts. It might be noted that by Ch. 25353, Laws of 1949 (appearing as Ch. 592, Fla. Stat. 1957, F.S.A.), the duties of the Florida Board of Forestry and Parks with respect to parks were transferred to the Florida Board of Parks and Historic Memorials, Sec. 592.08, Fla. Stat. 1957, F.S.A., so that Sec. 589.24, Fla. Stat. 1941, has now been transferred by the revisers to Ch. 592 of the Statutes, and appears as Sec. 592.121, Fla. Stat. 1957, F.S.A.
The appellants' other contentions with respect to the Chancellor's decree as to Item Three have been carefully considered and found to be without merit.
As to Item Eight, the issue here is whether a bequest to the appellee Koehler of "all my household possessions, furnishings, jewelry and other personal property, not otherwise disposed of, directing that she retain the same or make gifts thereof to such persons as she shall choose", is a general residuary clause applicable to all of the testatrix' personalty not otherwise bequeathed. The Chancellor so held, and his holding here is attacked by the appellants as contrary to the rule of ejusdem generis. We find no error here.
Mrs. Downey's will specifically disposed of all her realty; and, except for Item 8, it did not contain a general residuary clause. So, if Item Eight is interpreted *403 as here contended for by the appellants, Mrs. Downey must be held to have died intestate as to all personalty not of the same class as that specifically mentioned in Item Eight, e.g., postal certificates and savings accounts. In In re Smith, Fla. 1950, 49 So.2d 337, 339, this court quoted with approval Page on Wills (Lifetime Edition) Vol. 2, page 945, as follows:
"`A construction which results in partial intestacy will not be used unless such intention appears clearly. It is said that the courts will prefer any reasonable construction, or any construction which does not do violence to the testator's language, to a construction which results in partial intestacy.'"
While application of the rule of ejusdem generis in interpreting a bequest of this kind has not heretofore been considered by this court, it was pointed out by the United States Supreme Court in Given v. Hilton, 1877, 95 U.S. 591, 24 L.Ed. 458, that this rule is merely a rule of construction resting on the presumption that the testator had in mind only things of the class enumerated, and is "easily rebutted by anything that shows that the larger subject was in fact in the testator's view." See also the cases collected in the annotation in 128 A.L.R. at pages 831, et seq., and the annotator's comment at page 826 that "The courts are hesitant to apply the rule to residuary clauses, since to do so usually results in partial intestacy, * * *."
When considered in the light of the will as a whole and the rule of In re Smith, supra, 49 So.2d 337, it must be held that the Chancellor's decree respecting Item Eight was eminently correct.
No error having been made to appear, the decree appealed from should be and it is hereby
Affirmed.
THOMAS, Acting C.J., and HOBSON, DREW and O'CONNELL, JJ., concur.