115 So.2d 697 (1959)
SOUTHSIDE ESTATES BAPTIST CHURCH, Dr. Stanley Hahn, Southside Estates Methodist Church, Southside Estates Presbyterian Church, Prince of Peace Lutheran Mission, Carolyn B. Ledbetter, Mrs. John E. Roumillat and Mrs. George W. Turner, Appellants,
v.
BOARD OF TRUSTEES, SCHOOL TAX DISTRICT NO. I, IN AND FOR DUVAL COUNTY, Florida, Appellee.
Supreme Court of Florida.
November 18, 1959.
*698 Edward S. Parrish, Jr., Jacksonville, for appellants.
Anderson M. Foote, Jr., McCarthy, Lane & Adams and Daniel A. Naughton, Jacksonville, for appellee.
THORNAL, Justice.
Appellants, who were plaintiffs below, seek reversal of a final decree dismissing their bill of complaint by which they sought an injunction against the temporary use of a public school building for religious meetings.
We must determine whether a Florida public school can be used temporarily as a place of worship during non-school hours.
The appellee, Board of Trustees, permitted several churches to use various school buildings during Sunday non-school hours. The authorization was for the temporary use of the buildings pending completion of construction of church buildings. The record does not show whether the religious groups paid rent nor does it reflect any direct expense to the school trustees. It is clear that the use of the buildings did not interfere with the operation of the school system. The public school system was not in any fashion employed as a medium for the promotion of any religion. The appellants as plaintiffs, sought to enjoin the use of the school buildings for religious purposes. The Chancellor granted a motion to dismiss the amended complaint with prejudice. Reversal of this decree is now sought.
Appellants contend that the described use of a school building constitutes an indirect contribution of financial assistance to a church in violation of Section 6 of the Declaration of Rights of the Florida Constitution, F.S.A. It is also contended that such use contravenes the proscription of the First Amendment to the Constitution of the United States which prohibits any law establishing a religion.
The appellee replies that the record fails to sustain any contention that public funds are being employed for the benefit of the religions. Appellee asserts that the trustees have the power to permit the complained of use of the property under Section 235.02, Florida Statutes, F.S.A.
We find it unnecessary to delve into the question of whether the appellants are within a class entitled to bring this suit. There are no allegations that these appellants have sought and been denied the use of the school buildings. However, the individual appellants are alleged to be tax-payers. In view of this fact we will proceed by assuming that they have brought themselves within a class authorized to institute and pursue this type of proceeding.
Section 6, Declaration of Rights of the Florida Constitution, provides:

*699 "No preference shall be given by law to any church, sect or mode of worship and no money shall ever be taken from the public treasury directly or indirectly in aid of any church, sect or religious denomination or in aid of any sectarian institution."
Section 235.02, Florida Statutes, F.S.A. provides:
"Subject to law, the trustees of any district may provide for or permit the use of school buildings and grounds within the district, out of school hours during the school term, or during vacation, for any legal assembly, or as community play centers, or may permit the same to be used as voting places in any primary, regular, or special election. The county board shall adopt rules and regulations necessary to protect school plants when used for such purposes, and shall provide for the use of school property other than that under the supervision of trustees."
The appellants take the position that by permitting the religious groups to use the school buildings on Sundays the appellee trustees were indirectly taking money from the public treasury in aid of a religious denomination contrary to Section 6, of the Florida Declaration of Rights. It is their position that regardless of how small the amount of money might be, nevertheless, if anything of value can be traced from the public agency to the religious group, the Constitution has been thereby violated.
The appellees, on the other hand, counter with the provision of Section 235.02, supra, which grants to the trustees of a school district the discretion to permit the use of school buildings out of school hours "for any legal assembly". They properly point out that the record fails to reveal any direct expenditure of public funds. They then assert that so far as the record is concerned, the religious groups might be paying adequate rental for the use of the building and in all events any indirect expense to the public because of depreciation resulting from use by the churches is of such small consequence that the law should refuse to notice it.
We are not here involved in any problem dealing with the compulsory teaching of the bible or of some religious faith through the medium of the public school system. People v. State of Ill. ex rel. McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 648, 2 A.L.R.2d 1338. Neither are we confronted with a situation such as that presented in Tudor v. Board of Education, 14 N.J. 31, 100 A.2d 857, 45 A.L.R.2d 729, where the Supreme Court of New Jersey held that the distribution of Gideon Bibles in the public schools constituted a showing of a preference for Protestantism over Judaism and Catholicism and was, therefore, prohibited by the State and Federal Constitutions.
We resist the inclination to delve into the history of the doctrine of separation of the Church and State. This has been done most thoroughly by Chief Justice Vanderbilt in Tudor v. Board of Public Instruction, supra, and Justice Rutledge in his dissent in Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711. Reference to the cited opinions will produce an interesting and enlightening summary of the historical background of the doctrine.
We think, however, that it is totally unnecessary to become involved in any prolonged discussion of the applicability of the separation of Church and State principle. In regard to the Florida Constitutional prohibition against contributing public funds in aid of any religious denomination, we find nothing in this record to support a conclusion that any public funds have been contributed. Taking note of appellant's insistence that the use of the building is something of value and that the wear and tear is an indirect contribution from the public treasury, it appears to us that we might here properly apply the maxim De minimis non curat lex. Nothing of substantial consequence is shown and we see *700 no reason to burden this opinion with a discussion of trivia. There is no evidence here that one sect or denomination is being given a preference over any other. As a matter of fact, the amended complaint reveals that some four or five religious groups had been accorded the same treatment. None has been denied since the appellees established the policy assaulted by the complaint.
While admittedly, there are some differences of view regarding the matter of religious meetings in school houses during non-school periods, we think that logic, as well as our traditional attitudes toward the importance of religious worship, justifies our alignment with those courts which permit such use. The cases where this type of use of school property is permitted, usually involve the application of statutes similar to Section 235.02, supra. The cases which deny such use customarily involve situations where there has been no such statutory authorization. For an alignment of the cases on the subject, see Knowlton v. Baumhover, 182 Iowa 691, 166 N.W. 202, 5 A.L.R. 841, 886. See also, Merryman v. School District No. 16, 43 Wyo. 376, 5 P.2d 267, 86 A.L.R. 1181; Harfst v. Hoegen, 349 Mo. 808, 163 S.W.2d 609, 141 A.L.R. 1136.
We ourselves have heretofore taken the position that an incidental benefit to a religious group resulting from an appropriate use of public property is not violative of Section 6, of the Declaration of Rights of the Florida Constitution. Koerner v. Borck, Fla. 1958, 100 So.2d 398. See also Fenske v. Coddington, Fla. 1952, 57 So.2d 452.
In the instant case the Legislature has endowed the trustees of the school district with a reasonable discretion to permit the use of school property during non-school hours "for any legal assembly". We think that the religious observances described in the complaint are well within the category of "legal assembly". We do not consider that the provisions of Section 230.43(7), Florida Statutes, F.S.A., superimpose any limitations on the terms of Section 235.02, supra. Lest it be concluded that the discretion conveyed to the trustees is unlimited, we interpolate by way of dictum that it is conceivable that the power granted by this statute could be so abused that it would result in a violation of the Constitution. For example, if the use of the school buildings were permitted for prolonged periods of time, absent evidence of an immediate intention on the part of the Church to construct its own building, we think it could hardly be contemplated that the public school system or its property could be employed in the permanent promotion of any particular sect or denomination. Such, however, is not the case here. Were we to apply literally the rule advocated by the appellants it could lead to almost absurd results. It will be recalled that the appellants contend that any benefit to a religious group resulting from the use of the public property ipso facto constitutes an indirect contribution of public funds in violation of the cited section of the Florida Declaration of Rights. Were this the rule no religious organization could ever legitimately rent or otherwise use or occupy any public property. A familiar illustration would be the traditional Easter Sunrise Service observed in many communities throughout Florida. We know that such services are customarily held in public parks or playgrounds and, in some instances, in public school and state university stadia. The Easter Sunrise Service is dedicated to memorializing the Resurrection of Christ, a distinguishing aspect of the dogma of Christianity as contrasted to Judaism. An application of the rule contended for by appellants would result in prohibiting such services, not only on school grounds or stadia but in any public park. We think that when the rule is reduced to such absurd application its fallacies and weaknesses become obvious.
We, therefore, hold that a Board of Trustees of a Florida School District *701 has the power to exercise a reasonable discretion to permit the use of school buildings during non-school hours for any legal assembly which includes religious meetings, subject, of course, to judicial review should such discretion be abused to the point that it could be construed as a contribution of public funds in aid of a particular religious group or as the promotion or establishment of a particular religion.
We think that what we have said disposes also of the contention that the conduct of the appellee trustees is violative of the First Amendment to the Constitution of the United States, which provides in part that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; * * *", as the same has been made applicable to the states under the due process provision of the Fourteenth Amendment. We find nothing in the conduct of the appellee trustees to suggest the involvement of public funds or property in the establishment of a religion or in preferring one religious faith over another. We agree with those courts which have observed that in the ultimate the American people are basically religious. Their spiritual or theological views might differ, but by and large, they are committed to the ideal that there should be a place for any and all religions in the scheme of our community and social life.
The Chancellor ruled correctly in dismissing the amended complaint with prejudice. His decree is, therefore, affirmed.
THOMAS, C.J., and TERRELL, HOBSON and DREW, JJ., concur.