Billie Austin X. (BRYANT) and Keith X. Farries, on behalf of the brotherhood of the Nation of Islam, Petitioners,

v.

Norman CARLSON, Director, United States Bureau of Prisons, Washington, D. C., Respondent.

Civ. No. 72–60.

United States District Court,
E. D. Illinois.

July 23, 1973.

Billie Austin X. (Bryant) and Keith X. Farries, pro se.

Henry A. Schwarz, U. S. Atty., East St. Louis, Ill., for respondent.

## MEMORANDUM AND ORDER

FOREMAN, District Judge:

The two named petitioners, Billie Austin X. (Bryant) and Keith X. Farries, originally filed their "Petition for Writ of Mandamus, Declaratory or Other Injunctive Relief, or in the Alternative, Writ of Habeas Corpus," on behalf of the brotherhood of the nation of Islam at the Federal Penitentiary at Marion, Illinois, in the United States District Court for the District of Columbia. The cause was transferred to this Court because the Penitentiary is located within the Eastern District of Illinois, and the Court will consider the matter as a class action.

Petitioners contend the respondent has been discriminatory against the Muslim Religion of Islam in that (1) the prison serves a diet consisting of approximately three-fourths pork, and pork is forbidden the Muslims; (2) on several occasions office space and equipment has been refused the Muslims; (3) respondent has refused to pay a Muslim minister while paying ministers of other religions; and (4) Muslims have not been allowed equal time with other religions over the institutional radio.

The respondent, the Director of U. S. Bureau of Prisons, has filed a Motion to Dismiss alleging (1) the prison is under no obligation to supply a special religious diet when nourishment can be obtained from other foods; (2) denial of office space was not a result of any official sanction against petitioners' religion but due to a lack of space, and further, Muslims are allowed ample use of chapel facilities; (3) no recognized Muslim minister qualified to receive compensation has been available, and this point may become moot since the prison officials have, since the filing of petitioners' petition, been in contact with a Muslim minister with a view towards having

him minister to the Muslims; and finally (4) petitioners do not allege no access to the prison radio but merely failure to have equal time with Catholic, Jewish, and Protestant religions; further, petitioners have access to commercial radio, and to tapes of broadcasts and lectures.

Thereafter, on October 18, 1972, petitioners filed a pleading entitled "A Writ of Mandamus or in the Alternative, A Writ of Addendum to Petition Civil No. 72–60." The respondent has answered alleging that mandamus is improper in this case and the amendment or addendum to the original pleading is improperly and untimely made, and petitioners have filed a pleading opposing respondent's answer.

 In both pleadings petitioners seek a Writ of Mandamus under 28 U.S. C. § 1361 alleging violations of constitutional rights. Mandamus, historically, is an extraordinary remedy to be granted only in the exercise of sound judicial discretion. Ordinarily it must be shown that petitioner has a clear right to the relief sought, that respondent has a clear duty to perform the act requested, and no other adequate remedy is available. Carter v. Seamans, 411 F.2d 767 (5th Cir., 1969); Yahr v. Resor, 339 F.Supp. 964 (E.D.N.C., 1972). The claim must be clear and certain, the duty of the officer involved must be ministerial and plainly defined. Prairie Band of Pottawatomie Tribe of Indians v. Udall, 355 F.2d 364 (10th Cir., 1966). Normally acts of discretion are not subject to mandamus. Furthermore, a court should have the benefit of some specific statutes or regulations against which to measure the duties asserted to have been ignored by the respondents. Petitioners, here, as in Fifth Avenue Peace Parade Committee v. Hoover, 327 F.Supp. 238 (S.D.N.Y., 1971), merely assert that respondents have a duty not to violate their constitutional rights. I agree with the court's ruling in *Fifth Avenue Peace Parade Committee* to the effect that mere assertions of violations of constitu-

tional rights do not bring petitioners within the purview of federal jurisdiction contemplated by 28 U.S.C. § 1361. Fifth Avenue Peace Parade Committee v. Hoover, supra at page 243. Accordingly, this Court finds that mandamus is not a proper remedy and the petition, insofar as it seeks such a writ, is denied.

 Nor does this appear to be a proper situation for habeas corpus. The traditional function of the writ of habeas is to secure release or relief from illegal custody. Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Petitioners do not challenge the legality of their custody, accordingly habeas corpus is not the proper remedy.

However, the petitioners also ask for injunctive relief and what they term "relief in the alternative." The Court will therefore examine the petition and addendum thereto to determine if a justiciable cause of action exists under 28 U.S.C. § 1331(a).

 All of petitioners' claims and allegations pertain to alleged religious persecution or discrimination against the Muslims at Marion. It is not disputed that lawful incarceration brings about a withdrawal or curtailment of many privileges and rights, including the completely unfettered exercise of religious beliefs and practices. Cooper v. Pate, 382 F.2d 518 (7th Cir., 1967); Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356. However, a court should examine administrative action involving constitutional claims of prisoners pertaining to racial or religious discrimination to determine whether the rules and regulations imposed which result in limitations are justifiable and reasonable in the administration of a large population, maintenance of discipline, and control of any dangers or hazards presented. Walker v. Blackwell, 411 F.2d 23 (5th Cir., 1969).

Petitioners' first claim pertains to the diet which they contend is three-fourths pork. The prison menu attached to the

Government's Motion to Dismiss shows the food served at twenty-seven meals. Pork is shown as served with eleven of the meals, however, three of the pork items consisted of pork and beans or beans seasoned with pork. Pork was the main meat dish at both the noon and the evening meal on only two of the nine days. Even on those days, there were enough alternatives on the menu to provide a well-balanced and nourishing meal, especially considering the availability of meat other than pork on the other days.

Petitioners are not required to eat pork. They are free to choose the foods and to refrain from eating pork. The prison is not required to provide a special diet to satisfy petitioners' religious beliefs where, as is apparent here, sufficient nourishment can be obtained from the other food available. Abernathy v. Cunningham, 393 F.2d 775 (4th Cir., 1968). (See also Walker v. Blackwell, 411 F.2d 23 (5th Cir., 1969), where the court recognized the difficulties of serving after sunset meals for Black Muslims and the added expense of purchasing and preparing pork-free meals when the prisoners could sustain themselves, without eating essence of swine, on the prison's regular menu.)

Petitioners' second allegation of discriminatory religious practice involves the allocation of office space to the Muslims on several occasions. According to the affidavit of the senior Chaplain at Marion, Muslims are allowed to store their supplies and equipment in the Chaplain's office, and this is a practice consistent with that afforded other religious groups. Petitioners have not alleged in what manner this alleged discriminatory practice, which is controverted by the affidavit and motion, deprives them of their freedom to worship nor have they shown or alleged facts sufficient to show a prison policy of discrimination on the basis of religion.

Thirdly, petitioners contend the respondent has refused to pay Muslim ministers. The affidavit of the senior Chaplain shows that there are two full-time paid ministers on the staff, a Roman Catholic priest and a Protestant minister. They are hired because they represent the faiths of the largest percentages of the inmate population. A Jewish Rabbi is contracted for and paid per visit to the penitentiary. The prison officials are willing to contract with a recognized Muslim minister. In view of these assertions, petitioner has again failed to state a valid constitutional claim or show or allege a wilful discriminatory practice.

Petitioners' final contention in their original petition is that they have not been allowed equal time on the institutional radio to air their religious beliefs. They do not contend they are denied access to the radio. Rather, their complaint is that they are not allowed equal time. In Walker v. Blackwell, 411 F.2d 23, at page 28 (5th Cir., 1969), the court said:

"petitioners have failed to show that the broadcast was essential to the spiritual well being of the petitioners, rather than merely a source of '* * * spiritual rest and consolation and inspiration * * *' to them. In this connection, the absence of proof was accentuated by the number of religious practices already available to Black Muslim inmates.

In essence, the petitioners have shown the court no deprivation of constitutional right."

Petitioners first allege in their addendum filed October 8, 1972, that they were wrongfully restricted in the publication of a Muslim newspaper. Their petition indicates, however, that there has merely been a name change in the newspaper, and their exhibit indicates it is now published as part of a general newspaper for religious expression at Marion, Illinois. I fail to perceive how the plaintiffs are thus being restricted in their First Amendment right respecting freedom to worship as they see fit.

**932**

Petitioners next request that an "Islamic Bank Account" be established. They allege they are not receiving equal distribution of money. Whether or not to establish separate bank accounts for any religious sect should be an administrative decision of the prison officials, and not a matter for the district court to determine.

Petitioners also complain of alleged persecution by the culinary department. In short, Keith X. Farries contends he was forced to request a job change because the Administration wanted him to handle pork in the kitchen. Farries had a choice—either handle all foods required or request a job change. He elected to request a job change. His claim of deprivation of a constitutional right is wholly frivolous.

Finally, petitioners wish to attend Islamic services at Carbondale, Illinois. Whether to permit this is clearly an administrative decision involving questions of security and discipline. Upon being lawfully incarcerated certain privileges and rights may be withdrawn or restricted. Cooper v. Pate, 382 F.2d 518 (7th Cir., 1967). Freedom to attend religious services outside the prison is one of these privileges.

Petitioners have not alleged or shown that the restrictions placed on the free exercise of their religion are so oppressive as to constitute an unjustifiable and unreasonable limitation or that the restrictions were discriminatory in view of the need to maintain prison discipline in the large maximum security institution at Marion, Illinois. The additional allegations set forth in their addendum are wholly frivolous and without merit.

The Government's Motion to Dismiss is granted and the Petition For Writ of Mandamus, Declaratory or Other Injunctive Relief, or in the Alternative, Writ of Habeas Corpus including the relief requested in the Addendum is hereby denied, and the matter is dismissed in its entirety.