QUESTIONS:
1. Are any of the following practices prohibited by either the Establishment Clause of the First Amendment to the United States Constitution or s. 3, Art. I of the Florida Constitution: maintenance of an area within a county jail which is used for the conducting of religious services for the inmates; maintenance of a rent-free office within a county jail for the use of the prison chaplain; or use of public funds to employ a chaplain to minister to the inmates at the county jail?
2. If the answer to question 1 is in the negative, is the board of county commissioners authorized to establish such religious facilities at the county jail or compensate the prison chaplain from the general revenue fund of the county?
SUMMARY:
Neither the Establishment Clause of the First Amendment to the United States Constitution nor s. 3, Art. I, State Const., prohibits the maintenance of religious facilities within the confines of the county jail or the compensation from public funds of a chaplain to minister to the religious needs of the inmates provided that such facilities and clergy are made available to all inmates regardless of religious belief and that no one religion is given preference over another.
The internal operation and equipment of the county jail is the responsibility of the sheriff, subject to applicable rules and regulations promulgated by the Department of Offender Rehabilitation. Accordingly, the nature of religious facilities provided at the jail is within the discretion and jurisdiction of the sheriff, provided that no expenditure of funds for construction, repair, or capital improvement of the county jail is involved. Should repair or capital improvement of the county jail be required to provide religious facilities at the county jail, expenditures for such purpose would have to be authorized by the board of county commissioners.
Public funds may not be expended by the board of county commissioners to compensate a prison chaplain to service inmates of the county jail. However, the compensation of such chaplain may be included in the office budget of the sheriff and paid out of duly appropriated and budgeted moneys of that office.
AS TO QUESTION 1:
Your first question is answered entirely in the negative.
The Establishment Clause of the First Amendment to the U.S. Constitution prohibits the state from aiding, endorsing, or promoting particular religions. Abington School District v. Schempp, 374 U.S. 203 (1963); Engel v. Vitale, 370 U.S. 421
(1962); Everson v. Board of Education 330 U.S. 1 (1946). The Free Exercise Clause embraces the freedom to believe, and the freedom to act according to those beliefs, and thus prohibits the state from inhibiting the practice of religion. Cantwell v. Connecticut,310 U.S. 296 (1940); Walz v. Tax Commission, 397 U.S. 664
(1970). Both of these principles embodied in the First Amendment are applicable to the states by operation of theFourteenth Amendment. Torcaso v. Watkins, 367 U.S. 488 (1961); Cantwell v. Connecticut, supra. Similar concepts of religious freedom have also been guaranteed by the Florida Constitution under s. 3, Art. I:
 There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof. Religious freedom shall not justify practices inconsistent with public morals, peace or safety. No revenue of the state or any political subdivision or agency thereof shall ever be taken from the public treasury directly or indirectly in aid of any church, sect, or religious denomination or in aid of any sectarian institution.
The establishment of religious facilities in penal institutions, and, in particular, the payment of clerics by the state to minister to inmates in such institutions, has required the judiciary to examine the relationship between the Establishment and Free Exercise Clauses. In O'Malley v. Brierley, 477 F.2d 785
(3rd Cir. 1973), the court described its dilemma in the following manner:
 Is the creation by the state of an official position for a cleric, granting to him in a state building access to members of a state-controlled prison population state `sponsorship, financial support, and active involvement . . . in religious activity?' (Walz v. Tax Commission, 397 U.S. 664, 668
(1970).) Conversely, is the refusal by a state official to permit officially designated ministers of religion to counsel state-controlled prisoners on state property, state `inhibition' of religion? [447 F.2d at 792.]
Although the Supreme Court has not yet expressly decided whether or not state-supported religious facilities and clerics in prisons violate the Establishment Clause, see Abington School Dist. v. Schempp, supra (J. Brennan concurring 297-298), this issue has been explored by the lower federal courts. Thus, in Kahane v. United States, 396 F. Supp. 687, 698 (E.D.N.Y. 1975), aff'd,527 F.2d 49 (2nd Cir. 1975), the court analyzed the `unique area of tension' between the Free Exercise Clause and Establishment Clause in which prisons are located:
 [W]here the government has total control over people's lives, as in prisons, a niche has necessarily been carved into the establishment clause to require the government to afford opportunities for worship. . . . Thus, in the prison setting the establishment clause has been interpreted in light of the affirmative demands of the free exercise clause.
See also Horn v. People of California, 321 F. Supp. (D.C. Cal. 1968), aff'd, 436 F.2d 1375 (9th Cir. 1970), cert. den'd,401 U.S. 976 (1971), holding that the payment of funds to prison chaplains does not constitute an establishment of religion.
The impact of the Fourteenth Amendment upon the right of prison inmates to practice their religion has also been considered in recent years. It has been held that the Fourteenth Amendment precludes prison authorities from indirectly and unreasonably disfavoring the practices of some religions by prison inmates. See
Cruz v. Beto, 405 U.S. 319, 322 (1972) (while clergy need not be provided for every sect `regardless of size,' comparable opportunities for religious practices must be afforded); Knuckles v. Prasse, 302 F. Supp. 1036, 1057 (E.D.Pa. 1969) (inmates entitled to have access to Muslim minister where prison officials permitted visits by Catholic, Protestant, and Jewish clergy); X (Bryant) v. Carlson, 363 F. Supp. 928 (E.D. Ill. 1973) (no willful religious discrimination exists where prison officials demonstrated they were willing to contract for, and pay, on a per visit basis, a Muslim minister in same manner as for Catholic, Protestant, and Jewish clergy); Long v. Parker 390 F.2d 816 (3rd Cir. 1968) (case remanded to determine whether prison's failure to provide Muslim ministers constitutes discrimination when other faiths were provided clergy); Northern v. Nelson, 315 F. Supp. 687
(N.D.Cal. 1970), aff'd, 448 F.2d 1266 (9th Cir. 1971) (state that provides Protestant, Catholic, and Jewish clergy to prison inmates must also pay Muslim minister pursuant to and in accordance with rates paid to other faiths); Annot., 12 A.L.R.3d 1276. But cf. Gittlemacker v. Prasse, 428 F.2d 1 (3rd Cir. 1970) (the requirement that the state impose no unreasonable barriers to free exercise of inmates' religion cannot be equated with suggestion that the state has an affirmative duty to supply every inmate with a clergyman or religious services of his choice).
Applying the foregoing principles to your inquiry, I am of the opinion that the Establishment Clause of the First Amendment does not prohibit either the maintenance of an area within the Santa Rosa County Jail to be used for the conducting of religious services or the maintenance of a rent-free office within the confines of the jail for the purpose of religious counseling or other religious communications between the chaplain and the inmates or the use of public funds to compensate the chaplain. [A number of model penal and correctional codes advocate the provisions of religious facilities or chaplains to minister to the religious needs of prisoners confined in county or municipal jails as well as state and federal prisons. See American Bar Association, Joint Committee on the Legal Status of Prisoners,Tentative Draft of Standards Relating to the Legal Status ofPrisoners, s. 6(3)(b), (c), (e), (f) (1977); National Sheriffs' Association Manual of Jail Administration, s. 21(7), (1970); Fourth United Nations Congress on Prevention of Crime and Treatment of Offenders, Standard Minimum Rules for the Treatmentof Prisoners, Rules 41, 42 (1955); National Advisory Commission on Criminal Justice Standards and Goals, Corrections, s. 2.16 (1973).] Moreover, such practices are not, in my opinion, proscribed by s. 3, Art. I, State Const. Although the Florida Supreme Court has not yet considered whether or not religious facilities or clergy may, consistent with s. 3, Art. I, be provided for prisoners serving sentences in Florida penal institutions, Florida courts have generally been guided by cases decided under the First Amendment to the United States Constitution, when considering the meaning of s. 3, Art. I. See
State ex rel. Singleton v. Woodruff, 13 So.2d 704, 705 (1943), holding that s. 5 of the Declaration of Rights, State Const. 1885 (now s. 3, Art. I, State Const.) `merely reinforced the Federal immunization of religious liberties'; and the Commentary in 25 F.S.A. 83 (1970). Accordingly, I am of the opinion that, in the absence of, and pending, judicial determination, the maintenance of religious facilities in county jails or the payment of public funds to compensate a chaplain serving the religious needs of such prisoners does not violate s. 3, Art. I, State Const., provided that such religious facilities are provided on a nondiscriminatory basis, with no sect or denomination given preference over another.See and compare Brown v. Orange County Board of Pub. Inst.,128 So.2d 181 (2 D.C.A. Fla., 1960); Nohrr v. Brevard County Educational Fac. Auth., 247 So.2d 304 (Fla. 1971); Johnson v. Presbyterian Homes of Fla., Inc., 239 So.2d 256 (Fla. 1970); Paul v. Dade County, 202 So.2d 833 (3 D.C.A. Fla., 1967); Southside Estates Baptist Church v. Board of Trustees, 115 So.2d 697 (Fla. 1959). [It should also be noted that chapels may be found in state
penal institutions and that nondenominational chaplains are employed by the Department of Offender Rehabilitation to serve the religious needs of inmates confined in such institutions. See s.944.11, F. S., providing, inter alia, that the Department of Offender Rehabilitation `shall adopt such regulations as it may deem proper . . . for the proper instruction of the prisoners in their basic moral and religious duties.'] Additionally, it should be emphasized that the use of religious facilities or the conducting of religious services within the confines of the county jail is subject to such regulation and restriction as may be necessary to ensure the efficient functioning of the jail. Cf. Wolf v. McDonnell, 418 U.S. 539, 556 (1974), in which the U.S. Supreme Court recognized that there must be mutual accommodation between the institutional needs and objectives and the provisions of the Constitution that are of general application. See also
State ex rel. Singleton v. Woodruff, 13 So.2d 104 (Fla. 1943); and AGO 057-250 concluding that a sheriff may deny permission to religious groups seeking to hold services in jail corridors and hallways where such services would interfere with the normal functioning of the jail or endanger prison security.
AS TO QUESTION 2:
Although the sheriff `has no exclusively inherent or constitutional right to the custody, care and keeping of county convicts' [Lang v. Walker, 55 So. 78, 80 (Fla. 1903)], it has been held that in the absence of a constitutional description of his duties, `the operation of the [county jail] and the control and custody of the inmates therein are in the hands of the sheriff.' Baugher v. Alachua County, 305 So.2d 838, 839 (1 D.C.A. Fla., 1975). Accord: Brown v. St. Lucie County, 153 So. 906, 908 (Fla. 1933), wherein it was stated that the county jail is county property which the law requires the sheriff to `manage and look out for'; AGO 074-266, holding that the sheriff is responsible for `efficient operation of the jail'; 60 Am. Jur.2d Penal andCorrectional Institutions s. 9.
The sheriff's responsibility for the operation of the county jail is made apparent by s. 30.49, F. S., which provides in pertinent part:
 (1) At the time fixed by law for preparation of the county budget, each sheriff shall certify to the board of county commissioners a proposed budget of expenditures for the carrying out of the powers, duties, and operations of his office for the ensuing fiscal year of the county. The fiscal year of the sheriff shall henceforth commence on October 1 and end on September 30 of each year.
 (2) The sheriff shall submit with the proposed budget his sworn certificate, stating that the proposed expenditures are reasonable and necessary for the proper and efficient operation of the office for the ensuing year. Each proposed budget shall show the estimated amounts of all proposed expenditures for operating and equipping the sheriff's office and jail other than construction, repair, or capital improvement of county buildings during the said fiscal year.
The expenditures shall be itemized as follows:
(a) Salary of the sheriff.
(b) Salaries of deputies and assistants.
(c) Expenses, other than salaries.
(d) Equipment.
(e) Investigations.
(f) Reserve for contingencies. (Emphasis supplied.)
Section 30.49(4), F. S., authorizes the board of county commissioners to `amend, modify, increase or reduce any or all items of expenditures.' This section, however, only authorizes the board to increase or reduce by lump sum the six items set out in the statute and does not empower the board to `dictate how the monies [sic] allocated by any one item can be used.' Weitzenfeld v. Dierks, 312 So.2d 194, 196 (Fla. 1975). The Weitzenfeld court further held:
 We find the internal operation of the sheriff's office and the allocation of appropriated monies [sic] within the six items of the budget is a function which belongs uniquely to the sheriff as chief law enforcement officer of the county. [Id. at 196.]
See also s. 30.53, F. S., providing in pertinent part the `[t]he independence of the sheriffs shall be preserved, concerning the purchase of supplies and equipment, selection of personnel, and the hiring, firing, and setting of salaries of such personnel . . . .'
Applying the foregoing statutes and authorities to your inquiry, it appears that the establishment of religious facilities within the confines of the county jail constitutes part of the operation of the jail; and hence, the nature of such religious facilities so provided is within the discretion and jurisdiction of the sheriff, provided that no expenditures for construction, repair, or capital improvement of the county jail are involved. Attention should also be directed, however, to s. 951.23(2)(a) and (b), F. S., which authorizes and directs the Department of Offender Rehabilitation to adopt rules and regulations prescribing standards and requirements with reference to:
 (a) The construction, equipping, maintenance, and operation of county and municipal detention facilities;
 (b) The cleanliness and sanitation of county and municipal detention facilities; the number of county and municipal prisoners who may be housed therein per specified unit of floor space; the quality, quantity, and supply of bedding furnished to such prisoners; the quality, quantity, and diversity of food served to them and the manner in which it is served; the furnishing to them of medical attention and health and comfort items; and the disciplinary treatment which may be meted out to them.
Pursuant to the foregoing statutory authority the Department of Offender Rehabilitation has promulgated Rule 33-8.09 F.A.C. providing in relevant part:
 (1) The officer-in-charge [sheriff] should make maximum use of programs available through local community resources.
 (2) The following is a partial list of agencies that may provide services to prisoners . . . Ministerial Associations.
 (7) Rules and regulations shall be adopted to permit visits with prisoners by the following . . . his pastor . . . any persons who are participating in any rehabilitative or service program approved and authorized by the officer-in-charge of the detention facility.
Additionally, the payment of funds to a prison chaplain may be included within the sheriff's budget submitted in accordance with s. 30.49, F. S.
As to whether the board of county commissioners may independently authorize the expenditure of county funds to compensate a prison chaplain, I am of the opinion that a different conclusion must be reached. Noncharter counties may exercise only those powers which have been conferred upon them by law. Section 1(f), Art. VIII, State Const. See also State ex rel. Volusia County v. Dickinson,269 So.2d 9, 11 (Fla. 1972); AGO 077-38. In this regard, I find no statutory provision authorizing counties to expend county funds to compensate or employ chaplains to minister to inmates at the county jail. Compare s. 951.06, F. S., requiring the board of county commissioners to employ a captain and such personnel as may be necessary to guard county prisoners who are laboring on the public works of the county and providing that salaries of such employees be paid out of general revenue fund of the county. Seealso s. 951.03, F. S. Nor do I find a statutory provision which purports to vest any authority in the board of county commissioners with respect to the internal operation of the county jail. Cf. Baugher v. Alachua County, supra, in which it was stated: `[t]hat the defendant county has a duty to construct and provide funds for the operation of the jail can hardly be the basis for holding that it thereby becomes responsible for the day-to-day operation of the jail . . . .'
Accordingly, the maintenance of existing religious facilities or a chapel at the county jail is the responsibility of, and within the discretion and jurisdiction of, the sheriff, subject to applicable rules promulgated by the Department of Offender Rehabilitation pursuant to the provisions of s. 951.23, F. S. However, the board of county commissioners may authorize the repair or capital improvements of the county jail to provide for or establish such facilities or chapel. See s. 30.49, F. S., requiring the sheriff to include in his budget `estimated amounts of all proposed expenditures for operating and equipping the sheriff's office and jail other than construction, repair, or capital improvement ofcounty buildings. . . .' (Emphasis supplied.) Section125.01(1)(c), F. S., cf. s. 130.01, F. S.
Prepared by: Patricia R. Gleason Assistant Attorney General