CAMPBELL, Judge.
Appellant filed her complaint seeking declaratory and injunctive relief to prohibit appellee from permitting use of public school facilities during nonsehool hours by a religious organization. Appellee moved to dismiss the complaint with prejudice. The parties agreed that the matter should be submitted to the trial court for a determination of the issues of law raised by the pleadings on the basis of stipulated facts. The parties filed a written stipulation of facts on May 20, 1982, which contained the following crucial stipulated facts:
3. Defendant has a policy and administrative regulation which provides that: “school facilities may be used by religious groups during non-school hours. Such use shall be requested, considered and implemented in accordance with existing board policy and regulation governing the use of facilities by any outside organization.” (AR6115)
4. Pursuant to this policy defendant has permitted two churches to utilize school facilities for religious services. The church group now called St. Thomas More Catholic Mission first used the Gulf Gate Elementary School on October 6, 1979, and continues to use the school for services at all times material to this action. Masses are regularly held in the Gulf Gate Elementary School cafeteria at 4:30 P.M. each Saturday, and at 8:30, 10:00 and 11:30 A.M. each Sunday. Additional masses are held occasionally during week days during non-school hours for specific holy day observances.*
5. At all times, use of the Gulf Gate Elementary School by St. Thomas More Catholic Mission has been in compliance with board policy. Use has been during non-school hours and has not interfered with the operation of the school system. The use has been requested, considered and implemented in accordance with existing school board policy and regulations governing use of facilities by any outside organizations, religious or otherwise. The use does not involve the direct expenditure of public funds; expenses for janitorial services, utilities and other expenses are paid by the mission.
6. Neither defendant nor the Catholic Mission has ever intended for use of the Gulf Gate School to be permanent. The mission has accomplished the following steps in the process of constructing its own building for services:
a. A formal fund drive to raise money for construction has been undertaken. Two hundred thousand dollars ($200,-000.00) in cash has been received, with an *1358 additional four hundred thousand dollars ($400,000.00) of pledges.
b. The property upon which the new church is to be built has been selected and is already owned by the diocese.
c. A variance was necessary to use the property for a church, and that variance has already been applied for and received.
d. Design development of the new church building is almost complete. The mission pastor, Father Gene Ryan, has been working with Carl Abbott, a local architect. Some pricing on buildings has been received, but no decision has been made as yet on whether bids will be received or a negotiated bid will be pursued.
e. Current plans are for a ground breaking ceremony for the new church during fall, 1982. Termination of the use of school facilities is expected some time during 1983.
The trial court entered its order dismissing appellant’s complaint on September 20, 1982, and appellant timely appealed. We affirm.
After careful consideration of all the cases cited by the parties, we conclude that we need have looked no further than our supreme court’s decision in Southside Estates Baptist Church v. Board of Trustees, 115 So.2d 697 (Fla.1959). Mr. Justice Thor-nal stated the issue in that case as “whether a Florida public school can be used temporarily as a place of worship during non-school hours.” 115 So.2d at 698. The issue here is identical. Pertinent to a decision in Southside Estates was section 235.02, Florida Statutes (1957). That statute, as it existed at the time this action was filed in the lower court and as it exists now, has not been changed in any material manner.
The statute applicable and the issue for consideration being nearly identical here and in Southside Estates, we feel constrained to quote at length from Mr. Justice Thornal’s well reasoned and written opinion, for we do not perceive that we could do either any better.
While admittedly, there are some differences of view regarding the matter of religious meetings in school houses during non-school periods, we think that logic, as well as our traditional attitudes toward the importance of religious worship, justifies our alignment with those courts which permit such use. The cases where this type of use of school property is permitted, usually involve the application of statutes similar to Section 235.02, supra. The cases which deny such use customarily involve situations where there has been no such statutory authorization. For an alignment of the cases on the subject, see Knowlton v. Baumhover, 182 Iowa 691, 166 N.W. 202, 5 A.L.R. 841, 886. See also, Merryman v. School District No. 16, 43 Wyo. 376, 5 P.2d 267, 86 A.L.R. 1181; Harfst v. Hoegen, 349 Mo. 808, 163 S.W.2d 609, 141 A.L.R. 1136.
We ourselves have heretofore taken the position that an incidental benefit to a religious group resulting from an appropriate use of public property is not viola-tive of Section 6, of the Declaration of Rights of the Florida Constitution. Koerner v. Borck, Fla.1958, 100 So.2d 398. See also Fenske v. Coddington, Fla.1952, 57 So.2d 452.
In the instant case the Legislature has endowed the trustees of the school district with a reasonable discretion to permit the use of school property during non-school hours “for any legal assembly”. We think that the religious observances described in the complaint are well within the category of “legal assembly”. We do not consider that the provisions of Section 230.43(7), Florida Statutes, F.S.A., superimpose any limitations on the terms of Section 235.02, supra. Lest it be concluded that the discretion conveyed to the trustees is unlimited, we interpolate by way of dictum that it is conceivable that the power granted by this statute could be so abused that it would result in a violation of the Constitution. For example, if the use of the school buildings were permitted for prolonged periods of time, absent evidence of an immediate intention on the part of the Church to construct its own building, we *1359 think it could hardly be contemplated that the public school system or its property could be employed in the permanent promotion of any particular sect or denomination. Such, however, is not the case here. Were we to apply literally the rule advocated by the appellants it could lead to almost absurd results. It will be recalled that the appellants contend that any benefit to a religious group resulting from the use of the public property ipso facto constitutes an indirect contribution of public funds in violation of the cited section of the Florida Declaration of Rights. Were this the rule no religious organization could ever legitimately rent or otherwise use or occupy any public property. A familiar illustration would be the traditional Easter Sunrise Service observed in many communities throughout Florida. We know that such services are customarily held in public parks or playgrounds and, in some instances, in public school and state university stadia. The Easter Sunrise Service is dedicated to memorializing the Resurrection of Christ, a distinguishing aspect of the dogma of Christianity as contrasted to Judaism. An application of the rule contended for by appellants would result in prohibiting such services, not only on school grounds or stadia but in any public park. We think that when the rule is reduced to such absurd application its fallacies and weaknesses become obvious.
We, therefore, hold that a Board of Trustees of a Florida School District has the power to exercise a reasonable discretion to permit the use of school buildings during non-school hours for any legal assembly which includes religious meetings, subject, of course, to judicial review should such discretion be abused to the point that it could be construed as a contribution of public funds in aid of a particular religious group or as the promotion or establishment of a particular religion.
115 So.2d at 700-701.
AFFIRMED.
HOBSON, A.C.J., and SCHOONOVER, J., concur.

 Pursuant to this same policy, a Presbyterian Mission held services at the Wilkinson Elementary School in August, 1980.