THOMAS, J.,
dissenting.
I respectfully dissent from this court’s decision to deny rehearing en banc, pursuant to Florida Rule of Appellate Procedure 9.331. This is undeniably a case of exceptional importance, and we should rehear this case en banc, and recede from our prior incorrect decision in Bush v. Holmes, 886 So.2d 340 (Fla. 1st DCA 2004) (en banc), aff'd on other grounds, 919 So.2d 392 (Fla.2006). That decision is controlling in this case, absent en banc review. The panel’s opinion here will apply Holmes for the first time beyond the context of school vouchers, thus potentially jeopardizing a wide range of governmental social welfare programs, including faith-based placement programs for foster children, faith-based prison programs, and other State contracts with faith-based providers, as Judge Polston predicted in his dissenting opinion in Holmes. Id. at 376. This impact will occur despite statutory protections that prohibit a program provider from attempting to convert the program’s beneficiaries. See § 944.4731, Fla. Stat.
The majority decision in Holmes erroneously interpreted the plain text of article I, section three of the Florida Constitution by holding that the “no-aid” provision is violated whenever a religious provider of State services receives State revenues, regardless of the public benefit received in exchange for the revenues. Holmes did not rely on a single Florida precedent in reaching this conclusion. See Nohrr v. Brevard County Educ. Facilities Auth., 247 So.2d 304 (Fla.1971); Southside Estates Baptist Church v. Bd. of Trustees, *124 115 So.2d 697 (Fla.1959); Koerner v. Borck, 100 So.2d 398 (Fla.1958).
Under Florida Supreme Court precedent and the plain language of the Florida Constitution, the appropriate inquiry in a “no-aid” challenge is whether the “quantum of benefit” received by the religious institution reaches the threshold definition of aid. See Southside Estates Baptist Church, 115 So.2d at 700. Judge Wolfs concurring and dissenting opinion in Holmes correctly followed this test. Holmes, 886 So.2d at 371 (stating that the correct inquiry in any “no-aid” challenge is simply whether “a specific expenditure actually involves aid to a sectarian institution or merely involves an acceptable method of providing necessary services.”). The Florida Supreme Court also followed this test in City of Boca Raton v. Gidman, 440 So.2d 1277 (Fla.1983), in interpreting a similar provision in a municipal charter.
Although the doctrine of stare decisis is the preferred course for courts to follow, this court should recede from the majority opinion in Holmes. See generally Citizens United v. Fed. Election Comm’n, — U.S. -,-, 180 S.Ct. 876, 919, — L.Ed.2d -, - (2010) (Roberts, C.J., concurring) (“stare decisis is neither an ‘inexorable command,’ nor ‘a mechanical formula of adherence to the latest decision,’ especially in constitutional cases.”) (citations omitted). There are no “reliance interests” at stake in preserving our decision in Holmes. See generally Citizens United, 130 S.Ct. at 919, 130 S.Ct. 876 (citing Payne v. Tennessee, 501 U.S. 808, 828, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), and the proposition that under the doctrine of stare decisis, compelling interests may necessitate the preservation of prior precedent, as in contract and property cases).
We should grant Appellee’s Motion for Rehearing En Banc, recede from Holmes, adopt Judge Wolfs concurring and dissenting opinion in Holmes, and hold that a No-Aid violation occurs only where a governmental contract fails to include a legitimate quid pro quo.

Analysis

The issue before this court in Holmes was whether Florida’s Opportunity Scholarship Program violated the “no-aid” provision in article I, section three of the Florida Constitution, which provides:
No revenue of the state or any political subdivision or agency thereof shall ever be taken from the public treasury directly or indirectly in aid of any church, sect, or religious denomination or in aid of any sectarian institution.
(Emphasis added.) The majority opinion in Holmes divided the “no-aid” provision into three elements: “(1) the prohibited state action must involve the use of state tax revenues; (2) the prohibited use of state revenues is broadly defined, in that state revenues cannot be used ‘directly or indirectly in aid of the prohibited beneficiaries; and (3) the prohibited beneficiaries of the use of state revenues are ‘any church, sect, or religious denomination’ or ‘any sectarian institution.’ ” 886 So.2d at 352. This test was fundamentally flawed, because the constitution does not prohibit “indirect” aid, but it does prohibit the use of “direct or indirect” revenue “in aid” of religion.
While Florida’s constitution prohibits the use of direct or indirect revenue to aid a sectarian institution, it does not distinguish between direct and indirect aid. What is not prohibited by the plain text of the constitution and under Florida Supreme Court precedent is the use of state revenues to contract with faith-based institutions to obtain services that provide a public benefit. Johnson v. Presbyterian Homes of Synod of Fla., Inc., 239 So.2d 256 (Fla.1970); Nohrr, 247 So.2d at 306-07.
*125 In Holmes, however, this court adopted the trial court’s circular definition of aid:
While there is no evidence or assertion that any of the schools would cease to operate without the benefit of the [voucher] funds, that is not the test. It cannot be logically, legally, or persuasively argued that the receipt of these funds does not aid or assist the institution in a meaningful way. The entire educational mission of these schools, including the religious education component, is advanced and enhanced by the additional, financial support received through operation of the Opportunity Scholarship Program.
886 So.2d at 353 (emphasis added). This reasoning incorrectly equated aid to include the receipt of any funds from the State, regardless of the value of the legitimate sendee or goods provided in exchange for the funds. This was the entire discussion of the term “aid,” other than the statement that “Appellants do not take specific issue with this finding either, although appellants suggest that any benefit received is de minimus or is incidental.... ” Id. at 346. Scrutiny of the language in the constitutional provision reveals that the trial court’s reasoning was clearly flawed; thus, this court should not have relied upon it.
The majority’s opinion in Holmes overlooked the definition of aid when determining whether the voucher program constituted aid. “Aid” is defined as
1) a subsidy granted to the King by the English Parliament until the 18th century ... 2) a: the act of helping b: help given ... tangible means of assistance ... 3) a: an assisting person or group ... b: something by which assistance is given ... 4) a tribute paid by a vassal to his lord.... ”
Webster’s Ninth New Collegiate Dictionary 66 (1983).
When compared with the definition of “pay,” it becomes clear that the contracts under scrutiny in this case do not qualify as aid, as Appellees asserted below:
[TJhe Contracts cannot be considered as “aid” within any usual or ordinary meaning of that word.... The Contracts are bilateral agreements that speak in terms of the “mutual benefits” to be exchanged between parties.... Any funds paid under the Contracts would clearly be “pay,” not “aid.” Compare Webster’s Dictionary (1828) (“aid” means “help; succor, support, assistance”), and Webster’s II New College Dictionary 24 (2005) (to “aid” is “to give help or assistance to”), with Webster’s Dictionary (1828) (“pay” means “[t]o discharge a debt”), and Webster’s II New College Dictionary 827 (2005) (defining “pay” as “to give money to in return for goods or services rendered”).
(Citations omitted.)
The incorrect holding of Holmes will continue to adversely affect important governmental social welfare programs, despite Florida Supreme Court precedent that a State action which incidentally benefits religion does not violate article I, section three of the constitution. In Presbyterian Homes, 239 So.2d at 256, the plaintiff asserted that a statute which granted a tax exemption to elder care homes operated by a religious entity violated the predecessor to article I, section three. Although Presbyterian Homes does not discuss the “no-aid” sentence specifically, and instead addresses the Establishment Clause, the court’s analysis is relevant to the question of whether the State’s action aids a religious entity. Id. The Florida Supreme Court made it clear that section 192.06(14), Florida Statutes (1967), was enacted to promote general welfare by encouraging the establishment of homes for the aged, and not to favor religion because it was not *126 limited to homes maintained by religious groups. Id. 239 So.2d at 261. The court further determined that any benefit received by religious denominations was merely incidental to the achievement of a public purpose. Id. “A state cannot pass a law to aid one religion or all religions, but state action to promote the general welfare of society, apart from any religious considerations, is valid, even though religious interests may be indirectly benefited. If the primary purpose of the state action is to promote religion, that action is in violation of the First Amendment....” Id. (emphasis added).
Holmes is also inconsistent with other Florida Supreme Court decisions interpreting the “no-aid” provision. Nohrr, 247 So.2d at 306-07; Southside Estates Baptist Church, 115 So.2d at 698-700. In these decisions, the Florida Supreme Court held that the government’s involvement with faith-based entities did not violate the federal establishment clause or the State’s “no-aid” provision. In Nohrr, the court held that the State’s higher education bonds could issue to aid religious schools and secular schools without offending the establishment clause or article I, section three. 247 So.2d at 306-07. In Southside Estates Baptist Church, the court rejected the church’s claim that the school board violated the State’s predecessor “no-aid” provision by allowing other churches to utilize empty school buildings on Sundays for religious services. Interestingly, the court noted that the church’s challenge argued that “regardless of how small the amount of money might be, ... if anything of value can be traced from the public agency to the religious group, the Constitution has been thereby violated.” 115 So.2d at 698-99. The court properly rejected this argument, stating that an “incidental benefit to a religious group resulting from an appropriate use of public property is not violative of Section 6, of the Declaration of Rights of the Florida Constitution.” Id. at 700.
Conclusion
This court should rehear this case en banc, recede from our incorrect decision in Holmes, and remand this case to the lower court to allow Appellants an opportunity to attempt to amend their complaint and state a claim under the text of article I, section three of the Florida Constitution, as interpreted by the Florida Supreme Court in its well-established precedent interpreting the “no-aid” clause.