247 So.2d 304 (1971)
Philip F. NOHRR, State of Florida et al., Appellants,
v.
BREVARD COUNTY EDUCATIONAL FACILITIES AUTHORITY, Appellee.
No. 39805.
Supreme Court of Florida.
April 21, 1971.
*305 Philip F. Nohrr, in pro. per.
Eric W. Pappas of Storms, Pappas & Krasny, Melbourne, for appellee.
Frank L. Watson, Jacksonville, as amicus curiae.
*306 ADKINS, Justice.
This is a direct appeal from the final judgment of the Circuit Court of Brevard County, Florida, validating certain revenue bonds. Fla. Const., art. V, § 4(2), F.S.A.; F.A.R., Rule 2.1(a), (5) (a), 32 F.S.A.; Fla. Stat. § 75.08, F.S.A.
The revenue bonds were authorized under the provisions of Ch. 69-345, Laws of Florida, Fla. Stat. (1969) § 243.18 et seq., F.S.A., known as the "Higher Educational Facilities Authorities Law," (hereinafter referred to as the Educational Facilities Law). When this law was enacted the Legislature made a finding that there was an urgent need existing among institutions of higher education in Florida to obtain financing for expansion and improvement of higher educational facilities in order to meet the growing public demand. Fla. Stat. § 243.19, F.S.A. The Educational Facilities Law permitted the various Florida counties, wherever and whenever a need and public purpose was declared, to create a "County Educational Facilities Authority" which would assist institutions of higher education to obtain the necessary financing to develop and expand their educational facilities.
On December 31, 1969, the Board of County Commissioners of Brevard County, Florida, found that public need existed in the county and that the public interest would be served if a "County Educational Facilities Authority" (hereinafter referred to as the Authority) was created. The Board then adopted the resolution creating the Authority.
Subsequently, Florida Institute of Technology, a private higher educational institution in Brevard County (hereinafter referred to as F.I.T.) applied to the Authority for assistance in financing the construction at F.I.T. of a dormitory-cafeteria, together with necessary equipment and other facilities. After discussion and negotiation, the Authority adopted a resolution authorizing the issuance of $880,000 in revenue bonds at not more than seven and one-half per cent per annum, the proceeds of which would be used to construct the dormitory-cafeteria at F.I.T. and to pay for all expenses and costs incurred in connection therewith. The rents and other revenues received from the project, as well as the project, are to be assigned, pledged and mortgaged as security for the payment of the principal and interest on the revenue bonds.
A complaint seeking the validation of the revenue bonds was filed by the Authority and the State of Florida filed its answer denying generally the validity of the bonds.
At the final hearing, an intervenor, Philip F. Nohrr (hereinafter referred to as Defendant) was permitted to file an answer in which he attacked the validity of the proposed revenue bonds.
Final judgment was rendered validating the bonds and Defendant Nohrr appealed. The State of Florida did not appeal.
The Educational Facilities Law contains no reference to validation proceedings and Defendant says that the Authority was not within the classification of Plaintiffs set forth in Fla. Stat. § 75.02, F.S.A., so as to be authorized to bring validation proceedings.
Fla. Stat. § 75.02, F.S.A., provides that,
"Any county, municipality, taxing district or other political district or subdivision of this state, including the governing body of any drainage, conservation or reclamation district, and including also state agencies, commissions and departments authorized by law to issue bonds, may determine its authority to incur bonded debt or issue certificates of debt. * * *"
This section then authorizes such entities to file a complaint for the purpose of validating bonds or certificates of indebtedness.
The Authority, by statute, is "a public body corporate and politic" and is constituted *307 "as a public instrumentality," Fla. Stat. § 243.21(1), F.S.A.
Fla. Stat. § 75.02, F.S.A., was amended in 1949 to include state agencies, commissions and departments authorized to issue bonds. When the Authority deemed it necessary to validate the revenue bonds, the Circuit Court was authorized to entertain jurisdiction of the validation proceedings. State v. Inter-American Center Authority, 84 So.2d 9, 11 (Fla. 1955). This contention of the Defendant is without merit.
Defendant also urges that the Educational Facilities Law violates the First and Fourteenth Amendments to the United States Constitution and Fla. Const., art. I, § 3, calling for a separation of church and state. In other words, Defendant says that the law permits the authorities to issue revenue bonds in order to aid religious schools, as well as secular schools.
The Educational Facilities Law discloses that no aid is granted at public expense. All expenses are required to be borne by the educational institution involved and no other source of payment, which might otherwise be available for the public generally, is to be used in any manner whatsoever in connection with the project.
The Educational Facilities Law was enacted to promote the general welfare by enabling institutions of higher education to provide facilities and structures sorely needed for the development of the intellectual and mental capacity of our youth.
A state cannot pass a law to aid one religion or all religions, but state action to promote the general welfare of society, apart from any religious considerations, is valid, even though religious interests may be indirectly benefited. If the primary purpose of the state action is to promote religion, that action is in violation of the First Amendment, but if a statute furthers both secular and religious ends, an examination of the means used is necessary to determine whether the state could reasonably have attained the secular end by means which do not further the promotion of religion. Johnson v. Presbyterian Homes of Synod of Fla., Inc., 239 So.2d 256 (Fla. 1970). See also, Murray v. Comptroller of Treasury, 241 Md. 383, 216 A.2d 897 (1966) (cert. den. sub nom. Murray v. Goldstein, 385 U.S. 816, 87 S.Ct. 36, 17 L.Ed.2d 55). Walz v. Tax Commission of the City of New York, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970).
The Educational Facilities Law does not violate the First Amendment to the United States Constitution nor does it do violence to Art. 1, § 3, of the Florida Constitution.
The next question is whether the Educational Facilities Law violates Fla. Const., art. VII, § 10, by granting the credit of the state or county, or an agency of either, to the revenue bonds issued.
Fla. Stat. Ch. 243, F.S.A., authorizes a board of county commissioners to establish a county educational facilities authority to issue revenue bonds for financing the construction of facilities for private higher educational institutions in the county. Such an authority cannot be created without a declaration of the board of county commissioners that it is needed. Fla. Stat. § 243.31, F.S.A., Fla. Stat. §§ 243.24 and 243.25, F.S.A., authorize the county educational facilities authority to take title, by purchase or gift, of lands, structures, property, etc., in its name or in the name of the private educational institution as its agent; however, after the revenue bonds financing any acquisition or construction of such a project are liquidated the authority must convey the structures or other facilities to the educational institution free and clear of all liens. Fla. Stat. Ch. 243, F.S.A., was enacted after the adoption of the 1968 Constitution.
Fla. Stat. § 243.29, F.S.A. (Educational Facilities Law), provides as follows:
"Revenue bonds issued under the provisions of this part shall not be deemed to constitute a debt or liability of the *308 state or of the county or a pledge of the faith and credit of the state or of any such county, but shall be payable solely from the funds herein provided therefor from revenues. All such revenue bonds shall contain on the face thereof a statement of the effect that neither the State of Florida nor the authority shall be obligated to pay the same or the interest thereon except from revenues of the project or the portion thereof for which they are issued and that neither the faith and credit nor the taxing power of the State of Florida or of any political subdivision thereof is pledged to the payment of the principal of or the interest on such bonds. The issuance of revenue bonds under the provisions of this part shall not directly or indirectly or contingently obligate the state or any political subdivision thereof to levy or to pledge any form of taxation whatever therefor or to make any appropriation for their payment." (Emphasis supplied)
Fla. Const., art. VII, § 10 (1968), provides:

"Pledging credit. 
"Neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person; but this shall not prohibit laws authorizing:
"(a) the investment of public trust funds;
"(b) the investment of other public funds in obligations of, or insured by, the United States or any of its instrumentalities;
"(c) the issuance and sale by any county, municipality, special district or other local governmental body of (1) revenue bonds to finance or refinance the cost of capital projects for airports or port facilities, or (2) revenue bonds to finance or refinance the cost of capital projects for industrial or manufacturing plants to the extent that the interest thereon is exempt from income taxes under the then existing laws of the United States, when, in either case, the revenue bonds are payable solely from revenue derived from the sale, operation or leasing of the projects. If any project so financed, or any part thereof, is occupied or operated by any private corporation, association, partnership or person pursuant to contract or lease with the issuing body, the property interest created by such contract or lease shall be subject to taxation to the same extent as other privately owned property." (Emphasis supplied)
It appears that the framers of Fla. Const., art. VII, § 10(c) (1968), provided that public revenue bond financing of airport or port facilities and industrial or manufacturing plants by the means and within the limits prescribed in said section ipso facto did not involve the lending or use of a public unit's taxing power or credit to aid any corporation, association, partnership, or person. In other words, it was provided that the public revenue bond financing of these projects (airports, ports or industrial or manufacturing plants) alone, in contrast to the financing of any other projects, was recognized by the Constitution itself as not constituting the lending or use of public credit. Moreover, the naming of these particular projects was not intended to be exclusive, denying ab initio public revenue bond financing of all other types of projects. The language employed is not that no public revenue bonds shall be issued to finance any projects except those described in Section 10(c), but that the prohibition against lending a public unit's credit does not apply to the projects described in Section 10(c). This language may or may not apply to other projects, depending upon the particular circumstances in each instance.
All other proposed public revenue bond projects not falling into the exempted class *309 described in Section 10(c) of Article VII would, of course, have to run the gauntlet of prior case decisions to test whether the lending or use of public credit for any of them was contemplated. See, for example, the case of State v. Jacksonville Port Authority, 204 So.2d 881 (Fla. 1967), which presents a good index to decisions of this Court on both sides of the subject. It will be noted that under similar language in the 1885 Constitution (Section 10, Article IX) to that appearing in the first paragraph of Section 10 of Article VII of the 1968 Constitution the cases hold that the validity of each proposed public revenue bond financing project depends upon the circumstances, e.g., whether the purpose of the project serves a paramount public purpose, although there might be an incidental private benefit, and other criteria.
Under the foregoing construction of Section 10(c), Article VII, the dormitory-cafeteria projects involved here are not revenue projects that contemplate the lending or use of the credit of the county or its commissioners. The word "credit," as used in Fla. Const., art. VII, § 10 (1968), implies the imposition of some new financial liability upon the State or a political subdivision which in effect results in the creation of a State or political subdivision debt for the benefit of private enterprises.
In order to have a gift, loan or use of public credit, the public must be either directly or contingently liable to pay something to somebody. Neither the full faith and credit nor the taxing power of the State of Florida or of any political subdivision thereof is pledged to the payment of the principal of, or the interest on, these revenue bonds. The purchasers of the revenue bonds may not look to any legal or moral obligation on the part of the state, county, or authority to pay any portion of the bonds. This contention of Defendant is without merit. State v. Inter-American Central Authority, 84 So.2d 9 (Fla. 1955); State v. Florida Development Commission, 84 So.2d 707 (Fla. 1956).
Fla. Stat. § 243.21(4), F.S.A., sets the terms of the members of the Authority at five years. Defendant says this creates an office extending more than four years in violation of Fla. Const., art. III, § 13.
Fla. Const., art. IX, § 3, provides that members of any appointive body dealing with education may serve terms in excess of four years as provided by law. This section of the Florida Constitution is an exception to Fla. Const., art. III, § 13, providing that no office shall be created the term of which shall exceed four years. The Authority is an appointive body which deals solely with education and comes within the provisions of Fla. Const., art. IX, § 3.
Defendant next contends that the lower court erred in holding that the proposed revenue bonds were for a public purpose. Fla. Stat. § 243.19, F.S.A., contains a finding by the Legislature that projects financed under the Educational Facilities Law are, in effect, for a public purpose. The Board of County Commissioners of Brevard County, in activating the Authority, made a finding that there was a need for the Authority to function, as required by Fla. Stat. § 243.21, F.S.A.
Certainly, the financing of college dormitories and dining facilities as an aid in providing for the education of the youth of this State is a public purpose. It matters not whether the education is furnished by a state institution or by a private institution. The finding of the Legislature is determinative, and Defendant has failed to show that such determination was so clearly wrong as to be beyond the power of the Legislature. Similar laws have been upheld by other courts. Clayton v. Kervick, 52 N.J. 138, 244 A.2d 281 (1968); Vermont Educational Buildings Financing Agency v. Mann, 127 Vt. 262, 247 A.2d 68, appeal dismissed, 396 U.S. 801, 90 S.Ct. 9, 24 L.Ed.2d 58 (1968); Opinion of the Justices, 354 Mass. 779, 236 N.E.2d 523 (1968); In re Opinion of the Justices, 99 N.H. 536, 114 A.2d 801 (1955).
*310 Fla. Stat. § 243.27(3), F.S.A., provides that the revenue bonds shall bear interest "at such rate or rates not exceeding the legal rate per annum." Defendant cites Fla. Stat. § 687.01, F.S.A., which sets the legal rate of interest at six per cent per annum and says that the revenue bonds in the case sub judice are illegal in that they may be issued at the rate of seven and one-half per cent per annum.
Ch. 69-1739, Laws of Florida, provides that revenue bonds of this type may bear any rate of interest not exceeding seven and one-half per cent per annum. This law is an additional grant to every body, agency or political subdivision or Authority to promise to pay interest at a rate higher than any lower maximum rate previously established by law.
Defendant objects because any money which may be collected is not required to be held in a depository as prescribed in Fla. Stat., Chs. 136, 219 and 659, F.S.A. This objection is without merit for the provisions cited apply to county money.
Fla. Stat. § 243.28, F.S.A., authorizes the appointment of a bank within or without the state as trustee for revenue bonds of an Educational Facilities Authority. This demonstrates clear legislative intent that such trustee need not qualify under Florida law relating to depositaries for public money.
The funds involved could not be classified as taxpayers' money, so the policy of the depository laws in protecting "taxpayers' money" is not present. Any loss falls upon F.I.T. and not the public.
When the resolution authorizing the revenue bonds was first considered, it passed by a vote of three to zero. Fla. Stat. § 243.21(7), provides that three members constitute a quorum and the affirmative vote of a majority of the members present at a meeting of the Authority shall be necessary for any action taken by an Authority. One of the three votes was cast by a member who was also Treasurer of F.I.T. Defendant attacks the validity of the resolution saying that the vote of this latter member was illegal.
Fla. Stat. § 243.21(9), F.S.A., specifically provides that it shall not be a conflict of interest for a "trustee, director, officer or employee" of an institution for higher education to serve as a member of the Authority. This provision would make the vote legal.
In addition, it appears from the record that, at a subsequent meeting, the resolution authorizing the issuance of the revenue bonds was readopted by unanimous vote of all five members. The resolution was properly and legally adopted.
Once again, we repeat the observation made in State v. Florida State Turnpike Authority, 80 So.2d 337, 339 (Fla. 1955):
"* * * this court is not remotely concerned with the policy inherent in the legislative act * * *, the wisdom of provisions for turnpikes being a matter solely within the province of the legislature. This court is now required only to review the order of the circuit court which validated the bonds, proposed to be issued for the construction of a link in the turnpike. * * * The pivotal question before us is whether the Florida State Turnpike Authority has acted within the power vested in that body of the legislature." See also State v. Florida State Turnpike Authority, 134 So.2d 12, 22 (Fla. 1961).
Pursuant to authority contained in Chapter 69-345, the trust indenture under which the revenue bonds are to be issued grants a mortgage with right of foreclosure on the lands and building constituting the project to be financed.
Commencing with the case of Boykin v. Town of River Junction, 121 Fla. 902, 164 So. 558 (1935), the Court without exception has held that revenue bonds secured by a mortgage on the physical properties to *311 be financed could not be issued by public bodies unless approved at an election.
In the case of State v. Inter-American Center Authority, 143 So.2d 1 (Fla. 1962), no mortgage with right of foreclosure was granted. A trust indenture was involved and the trustee had the duty to sell portions of the property in the event of a default on the part of the Authority. The Court validated the bonds but was very careful to point out the lack of the remedy of foreclosure. In this connection it said:
"The provisions of the indenture empowering the trustee on behalf of the authority to sell such portions of the properties as necessary to protect the bondholders are valid and constitute a lawful and proper delegation of power and are not violative of any laws prescribing the method of foreclosure of mortgages.
"* * *
"In regard to the contention that Point Six assumes that the trust indenture creates a mortgage, in view of what has already been said on this point, it is enough to say that there is no merit to this contention. The persons secured by the trust indenture have no right to the remedy by foreclosure."
While perhaps the county would experience no coercion to levy a tax to prevent the foreclosure of the project leased to this nonprofit corporation in the event of a default; yet, such would not be the case if these bonds were issued to finance a project for Brevard Junior College or for the University of Florida. Most certainly the county or the legislature would feel morally compelled to levy taxes or to appropriate funds to prevent the loss of those properties through the process of foreclosure.
With certain exceptions not pertinent to the case sub judice, a mortgage with the accompanying right of foreclosure is not constitutionally permissible without an election. Such is not permissible if the project is leased to a nonprofit corporation as distinguished from the lease of a project to a publicly-owned institution. Consistency is desirable and absent specific constitutional authority a mortgage securing revenue bonds of a public body should not be approved without an election.
The revenue bonds should be validated but the provisions in the trust indenture relating to the mortgage of the project and the accompanying right of foreclosure are deleted. State v. Florida State Improvement Commission, 160 Fla. 230, 34 So.2d 443, 450 (1948).
The final judgment of the Circuit Judge validating the revenue bonds as modified must be affirmed.
It is so ordered.
ERVIN, CARLTON, McCAIN and DEKLE, JJ., concur.
ROBERTS, C.J., dissents.
BOYD, J., dissents with opinion.
BOYD, Justice (dissenting):
I must dissent to the majority opinion. The 1968 Constitution does not include this type of bond issue among those specifically authorized under subsection (c), Section 10, Article VII.