SUNDBERG, Justice.
This is a direct appeal from the final judgment of the Circuit Court for Sarasota County, Florida, validating certain revenue bonds. We have jurisdiction. Article V, Section 3(b)(2), Florida Constitution; Section 75.08, Florida Statutes (1975); Florida Appellate Rule 2.1 a(5). See also Florida Rules of Appellate Procedure 9.030(a)(1).
Appellee, Sarasota County Health Facilities Authority (the Authority), was created pursuant to Part III, Chapter 154, Florida Statutes (1975), the Health Facilities Authorities Law, through an ordinance adopted by the Board of County Commissioners of Sarasota County. The Authority was created for the purpose of assisting health facilities situated in Sarasota County in the acquisition, construction, financing and refinancing of projects in the County. Pursuant to the ordinance, a Citizens Advisory Committee (the Committee) was appointed to provide recommendations to the Authority with regard to the creation of health facilities, their financing, operation and management and all matters related thereto. Following public meetings and consideration of a proposed financing plan and feasibility study, the Committee made a written recommendation to the Authority that a bond issue be undertaken to finance the construction of improvements to the Sarasota County Memorial Hospital Association, Inc., doing business as Venice Hospital (hereinafter referred to as Venice Hospital). The improvements include a third floor addition to the hospital and the construction, by shelling in only, of a fourth floor addition. A portion of the proceeds of the bond issue are to be utilized to refinance temporary financing undertaken by the hospital to commence construction of the third and fourth floor improvements, and to refinance old debts incurred in connection with the existing two floors of the hospital. The recommendation of the Committee also stated that Venice Hospital is a not-for-profit Florida corporation.
On August 9, 1977, in reliance upon the recommendation of the Committee, the Authority adopted a resolution authorizing the *766 issuance of revenue bonds. The resolution contains a proposed lease agreement and trust indenture and sets forth a financing plan. The financing plan contemplates that all of the hospital facilities of Venice Hospital will be conveyed to the Authority and leased back to the hospital for rental payments sufficient to pay the principal of, premium, if any, and interest on the bonds issued by the Authority. In addition, to secure such rents the Authority will be granted a security interest in the gross revenues of the hospital including the contract rights of the hospital to receive such gross revenues. As security for payment of the bonds all of the Authority’s interest in the lease will be assigned to a trustee for the benefit of bondholders pursuant to the terms of the trust indenture. The resolution provides with respect to the bonds, inter alia:
The Bonds shall be payable solely from and secured by a prior lien upon and pledge of the proceeds to be derived by the Authority from the lease of the Project by the Authority to [Venice Hospital] pursuant to the provisions of the Lease Agreement. The Bonds shall not be or constitute general obligations or indebtedness of the Authority, Sarasota County or the State of Florida within the meaning of Article VII, Section 12 of the Constitution of the State of Florida, or otherwise, but shall be payable solely from the aforesaid special funds.
A complaint seeking validation of the public revenue bonds was filed by appellee in the Circuit Court for Sarasota County, Florida. Appellant, Sheldon G. Wald, intervened in the bond validation proceeding in the circuit court. We deem it necessary to address only four of the issues raised by him in the lower court. First, appellant argues that by virtue of Article VII, Section 10(c), Florida Constitution, the Authority lacks the power to lend its credit by issuing public revenue bonds for a private enterprise which does not fall within one of the exceptions enumerated in that constitutional provision. Second, appellant attempted to introduce evidence that a pattern of discrimination exists at the hospital with regard to the admission of applicants for medical staff privileges. This allegation, if proven, would purportedly result in the loss of the hospital’s tax-exempt status as a charitable organization under Section 501 of the United States Internal Revenue Code, which status the hospital must arguably retain in order to qualify for revenue bonds under Article VII, Section 10(c), Florida Constitution. Appellant’s third contention is that the alleged discriminatory conduct renders the hospital no longer eligible for status as a corporation organized not-for-profit under Chapter 617, Florida Statutes (1975). Consequently, posits appellant, the hospital does not constitute a health facility, which is defined by Section 154.-205(8), Florida Statutes (1975), as “any private corporation organized not-for-profit and authorized by law to provide hospital . services . . .Because Section 154.219, Florida Statutes (1975), permits the issuance of revenue bonds only for the acquisition of a “health facility,” the bonds could not properly issue for the Venice Hospital project. Appellant’s fourth point is grounded upon the proposition that, due to the profit-making nature of the hospital, construction of the improvements purportedly fails to serve a paramount public purpose as required 'by Article VII, Section 10(c), Florida Constitution.
The circuit judge declined to admit evidence of the alleged discriminatory practices of Venice Hospital and, on October 13, 1977, entered a final judgment validating the revenue bonds. In the final judgment, the circuit judge found that the Venice Hospital project and refinancing are in the public interest and that the facility is a not-for-profit Florida corporation. The judgment further recites that the bonds will be payable from the revenues generated by the hospital facility and that “no holder or holders of any of the bonds or any coupons appertaining thereto shall ever have the right to compel the exercise of any ad valorem taxing power to pay the bonds or the interest thereon . . .
For the reasons hereinafter stated, we conclude that the circuit judge was emi *767 nently correct in declining to receive the evidence in issue and that the judgment validating the public revenue bonds is proper.
Article VII, Section 10 of the Constitution of the State of Florida (1968), provides as follows:
Pledging credit. — Neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person; but this shall not prohibit laws authorizing:
(a) the investment of public trust funds;
(b) the investment of other public funds in obligations of, or insured by, the United States or any of its instrumentalities;
(c) the issuance and sale by any county, municipality, special district or other local governmental body of (1) revenue bonds to finance or refinance the cost of capital projects for airports or port facilities, or (2) revenue bonds to finance or refinance the cost of capital projects for industrial or manufacturing plants to the extent that the interest thereon is exempt from income taxes under the then existing laws of the United States, when, in either case, the revenue bonds are payable solely from revenue derived from the sale, operation or leasing of the projects. If any project so financed, or any part thereof, is occupied or operated by any private corporation, association, partnership or person pursuant to contract or lease with the issuing body, the property interest created by such contract or lease shall be subject to taxation to the same extent as other privately owned property.
(d) a municipality, county, special district, or agency of any of them, being a joint owner of, giving, or lending or using its taxing power or credit for the joint ownership, construction and operation of electrical energy generating or transmission facilities with any corporation, association, partnership or person.
The revenue bonds in question were issued under the provisions of Chapter 154, Florida Statutes (1975). Section 154.223 of that Chapter provides as follows:
Revenue Bonds issued under the provisions of this part shall not be deemed to constitute a debt, liability, or obligation of the local agency or the state or any political subdivision thereof, or a pledge of the faith and credit of the local agency or the state or any political subdivision thereof, but shall be payable solely from the revenues provided therefor. All such revenue bonds shall contain on the face thereof a statement to the effect that the authority shall not be obligated to pay the same or the interest thereon except from the revenues of the project or the portion thereof for which they are issued and that neither the faith and credit nor the taxing power of the local agency or of the state or of any political subdivision thereof is pledged to the payment of the principal of or the interest on such bonds. The issuance of revenue bonds under the provisions of this part shall not directly, indirectly, or contingently obligate the local agency or the state or any political subdivision thereof to levy or to pledge any form of taxation whatever therefor or to make any appropriation for their payment.
(Emphasis supplied).
Appellant’s first two points are disposed of by our decision in Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla.1971). There, a challenge identical to that raised by appellant in his first point was made to the proposed issuance of public revenue bonds — that such contemplated the impermissible lending of the credit of the State or a county to a private project not specifically enumerated in Article VII, Section 10(c) of the Florida Constitution. The revenue bonds challenged in Nohrr were authorized under the provisions of Chapter 243, Florida Statutes (1969), often referred to as the Educational Facilities Law. The enactment permitted the various Florida counties, where a need and public purpose has been declared, to *768 create a “County Educational Facilities Authority” (the Educational Authority) which would assist institutions of higher learning in obtaining the financing necessary to develop and expand their educational facilities. The Educational Authority was duly created by the Board of County Commissioners of Brevard County, Florida, after the Board had found the requisite need and public purpose to exist. Subsequently, a resolution was adopted by the Educational Authority authorizing the issuance of revenue bonds to finance the construction of a dormitory-cafeteria, together with necessary equipment and other facilities, at a private university. Section 243.29, Florida Statutes (1969), like its counterpart under the Health Facilities Authorities Law (Part III, Chapter 154) in the case sub judice, provided that revenue bonds authorized under its provisions would not pledge the full faith and credit of the State or a county.
In rejecting appellant’s challenge to the public revenue bonds as constituting an impermissible extension of the State or county credit in Nohrr, we stated:
It appears that the framers of Fla. Const., art. VII, § 10(c) (1968), provided that public revenue bond financing of airport or port facilities and industrial or manufacturing plants by the means and within the limits prescribed in said section ipso facto did not involve the lending or use of a public unit’s taxing power or credit to aid any corporation, association, partnership, or person. In other words, it was provided that the public revenue bond financing of these projects (airports, ports or industrial or manufacturing plants) alone, in contrast to the financing of any other projects, was recognized by the Constitution itself as not constituting the lending or use of public credit. Moreover, the naming of these particular projects was not intended to be exclusive, denying ab initio public revenue bond financing of all other types of projects. The language employed is not that no public revenue bonds shall be issued to finance any projects except those described in Section 10(c), but that the prohibition against lending a public unit’s credit does not apply to the projects described in Section 10(c). This language may or may not apply to other projects, depending upon the particular circumstances in each instance.
All other proposed public revenue bond projects not falling into the exempted class described in Section 10(c) of Article VII would, of course, have to run the gauntlet of prior case decisions to test whether the lending or use of public credit for any of them was contemplated. See, for example, the case of State v. Jacksonville Port Authority, 204 So.2d 881 (Fla.1967), which presents a good index to decisions of this Court on both sides of the subject. It will be noted that under similar language in the 1885 Constitution (Section 10, Article IX) to that appearing in the first paragraph of Section 10 of Article VII of the 1968 Constitution the cases hold that the validity of each proposed public revenue bond financing project depends upon the circumstances, e. g., whether the purpose of the project serves a paramount public purpose, although there might be an incidental private benefit, and other criteria.
Under the foregoing construction of Section 10(c), Article VII, the dormitory-cafeteria projects involved here are not revenue projects that contemplate the lending or use of the credit of the county or its commissioners. The word “credit,” as used in Fla.Const., art. VII, § 10 (1968), implies the imposition of some new financial liability upon the State or a political subdivision which in effect results in the creation of a State or political subdivision debt for the benefit of private enterprises.
In order to have a gift, loan or use of public credit, the public must be either directly- or contingently liable to pay something to somebody. Neither the full faith and credit nor the taxing power of the State of Florida or of any political subdivision thereof is pledged to the payment of the principal of, or the interest on, these revenue bonds. The purchasers of the revenue bonds may not look to any *769 legal or moral obligation on the part of the state, county, or authority to pay any portion of the bonds. This contention of Defendant is without merit. State v. Inter-American Central Authority, 84 So.2d 9 (Fla.1955); State v. Florida Development Commission, 84 So.2d 707 (Fla.1956).
247 So.2d at 308-309.
In Nohrr, therefore, we specifically noted that Article VII, Section 10(c) of this State’s Constitution, does not constitute the sole authority for the issuance of public revenue bonds. As was the case with the proposed educational facilities in Nohrr, the hospital improvements in issue here do not fall within the specifically enumerated exceptions contained in Section 10(c). Consequently, the criteria set forth in that constitutional provision do not control the determination of the validity of the public revenue bonds issued for the Venice Hospital project. Instead, our inquiry is guided by the criteria enunciated in Nohrr—whether the public revenue bonds contemplate a pledge of the credit of the State or a county and whether the funded project serves a paramount public purpose. We will address the latter criterion, to which appellant’s fourth point is directed, later in this opinion. As is reflected by the final judgment of the circuit court validating the bonds in issue, these are not general obligation bonds, but are payable solely from the revenues generated by the Venice Hospital project. Because no pledge of the full faith and credit of the State or a county is proposed, appellant’s first point must fail.
Moreover, the determination that the hospital facility does not fall within one of the enumerated categories contained in Article VII, Section 10(c), Florida Constitution, adversely disposes of appellant’s second point on appeal. Since the hospital is outside the enumerated categories in Article VII, Section 10(c), that provision is inapplicable to the challenged bonds. Consequently, the tax-exempt status of these bonds is irrelevant to the issue of their validity.
We agree with the contention made in appellant’s third point on appeal—that not-for-profit status is an inextricable ingredient of the definition of a “health facility” under Chapter 154, Florida Statutes (1975). However, the corporate charter of Venice Hospital recognizes it as a not-for-profit institution. Appellant has not attempted to challenge the status of Venice Hospital under the laws of this State as a not-for-profit corporation but, rather, has sought to establish that it is carrying on practices which belie its acknowledged legal status. It is suggested that Venice Hospital has unreasonably excluded certain physicians from medical staff privileges. Because patients of those qualified physicians who allegedly have been unreasonably denied medical staff privileges are unable to be treated at Venice Hospital by these skilled doctors and the hospital is being operated for the economic and professional benefit of those few. physicians who have been granted such privileges, submits appellant, the facility fails to serve a paramount public purpose. We conclude that absent an attack upon the efficacy of the corporate charter of Venice Hospital,[1] the not-for-profit status conferred upon it by that instrument determines the issue of its eligibility for public revenue bond financing under the provisions of Part III, Chapter 154, Florida Statutes (1975). Because appellant in the case sub judice has failed to make such an attack, evidence of the alleged discriminatory policies with regard to admissions for medical staff privileges merely involves collateral issues which are not properly cognizable by a court in a bond validation proceeding. See State v. Manatee County Port Authority, 171 So.2d 169 (Fla.1965); Town of Medley v. State, 162 So.2d 257 (Fla.1964); State v. City of Miaami, 103 So.2d 185 (Fla.1958).
Appellant’s final point on appeal concerns the alleged failure of Venice Hospital to serve a paramount public purpose *770 as required by Nohrr v. Brevard County Educational Facilities Authority, supra. An examination of Chapter 154, Florida Statutes (1975), and our decision in Nohrr, supra, effectively rebut this argument. By virtue of the legislative determination, embodied in Section 154.203, Florida Statutes (1975), that facilities governed by Chapter 154 are in the public interest, no independent judicial inquiry will be made into the public nature of facilities properly falling within this chapter. Venice Hospital is such a facility. In Nohrr, supra, we rejected a similar allegation that the educational facilities, the financing of which the legislature had statutorily determined to be for a public purpose, did not in fact satisfy this requirement:
Defendant next contends that the lower court erred in holding that the proposed revenue bonds were for a public purpose. Fla.Stat. § 243.19, F.S.A., contains a finding by the Legislature that projects financed under the Educational Facilities Law are, in effect, for a public purpose. The Board of County Commissioners of Brevard County, in activating the Authority, made a finding that there was a need for the Authority to function, as required by Fla.Stat. § 243.21, F.S.A.
Certainly, the financing of college dormitories and dining facilities as an aid in providing for the education of the youth of this State is a public purpose. It matters not whether the education is furnished by a state institution or by a private institution. The finding of the Legislature is determinative, and Defendant has failed to show that such determination was so clearly wrong as to be beyond the power of the Legislature.
247 So.2d at 309.
Appellant here has similarly failed to establish that the legislative finding that the financing of public health facility improvements is in the public interest is “so clearly wrong as to be beyond the power of the Legislature.” Obviously, the provision of adequate health care facilities fosters the health, safety and welfare of the citizens of this State and, therefore, serves a paramount public purpose.
In connection with his final point on appeal, appellant posits that continued public scrutiny of the operation of Venice Hospital over the thirty-year life of the bonds is required. Such scrutiny is necessary, it is argued, to insure that the facility will not be diverted from its public purpose subsequent to the validation of the bonds but while these obligations remain outstanding. However, the circuit judge in the bond validation proceeding sub judice was merely called upon to determine whether, at the time of the proceeding, the Venice Hospital project met the paramount public purpose requirement. As was recognized by this Court in State v. Manatee County Port Authority, supra, the function of a bond validation proceeding is to make a final determination with respect to the validity of the proposed revenue bonds:
The function of a [bond] validation proceeding ... is to put in repose any question of law or fact affecting the validity of the bonds. State v. Suwannee County Development Authority, [122 So.2d 190 (Fla.1960)]; North Shore Bank v. Surfside, Fla., 72 So.2d 659 [(Fla.1954)].
171 So.2d at 171 (emphasis supplied).
Part III, Chapter 154, Florida Statutes (1975), fails to reflect a legislative intent that the circuit court’s finding with respect to the paramount public purpose requirement be non-final; that a hospital facility be monitored subsequent to the validation proceeding to determine whether the project continues to qualify for this public financial assistance. Even assuming the propriety of appellant’s suggestion, it is not the province of this Court to vary the clear intent of the legislature by altering the statutorily enunciated procedures and requirements affecting bonds issued pursuant to Chapter 154. See Tatzel v. State, 356 So.2d 787 (Fla.1978); McDonald v. Roland, 65 So.2d 12 (Fla.1953); Vocelle v. Knight Brothers Paper Co., 118 So.2d 664 (Fla. 1st DCA 1960). The trial court found, and we concur, that the procedural requirements necessary to invoke financing of this project under the provisions of Part III, *771 Chapter 154, Florida Statutes (1975), have been met. Judicial inquiry may go no further. Cf. State v. City of Sunrise, 354 So.2d 1206 (Fla.1978).
For the reasons herein stated, the final judgment of the Circuit Court for Sarasota County, Florida, validating the revenue bonds in issue is affirmed.
It is so ordered.
OVERTON, C. J., and ADKINS, BOYD, ENGLAND, HATCHETT and ALDERMAN, JJ., concur.

. Such an attack might be based, for example, upon an allegation of fraud in the procurement of a corporate charter or violation of the expressed provisions thereof.