400 So.2d 949 (1981)
STATE of Florida, Appellant,
v.
LEON COUNTY, Florida, Appellee.
No. 60716.
Supreme Court of Florida.
June 25, 1981.
*950 Donald S. Modesitt, State Atty., for the Second Judicial Circuit, Tallahassee, for appellant.
F.E. Steinmeyer, III, County Atty., Tallahassee, G. Keith Quinney, Jr., and Talbot D'Alemberte, of Steel, Hector & Davis, Miami, and R. William Ide, III and Frank A. Lightmas, Jr. of Kutak, Rock & Huie, Atlanta, Ga., for appellee.
James J. Cooney, Miami, Roy S. Goldfinger, Cleveland, Ohio, and J. Michael Nifong of Squire, Sanders & Dempsey, Miami, for Florida Chamber of Commerce, Inc. d/b/a Florida Chamber of Commerce, amicus curiae.
SUNDBERG, Chief Justice.
We have for review an order of the Circuit Court for Leon County validating its Industrial Development Revenue Bonds for the construction of a nursing home health care facility. Jurisdiction vests in this Court pursuant to article V, section 3(b)(2), Florida Constitution and section 75.08, Florida Statutes (1979). This Court's function in reviewing bond validation cases is limited to determining whether the governmental agency issuing the bonds had the power to act and whether it exercised that power in accordance with the law. Doane v. Lee County, 376 So.2d 852 (Fla. 1979); Speer v. Olson, 367 So.2d 207 (Fla. 1978). We affirm the judgment of the trial court.
The Florida Industrial Development Financing Act, chapter 159, part II, Florida Statutes, provides for the issuance by duly created authorities of tax-exempt bonds to finance the cost of various types of projects enumerated in the Act. During the 1980 session of the Florida Legislature, the definition of the term "project" contained in the Act was expanded to include, among other facilities, investor-owned, for-profit health care facilities.[1]
*951 In early 1981, Beverly Enterprises requested that Leon County adopt a resolution authorizing the issuance of revenue bonds in the amount of $2,000,000 to finance the construction of a 120-bed intermediate and skilled care nursing home facility to be located in Leon County. The resolution was duly adopted on May 12, 1981. On the same day, Leon County filed its complaint in circuit court seeking validation of the bonds. In its order of June 4, 1981, validating the bonds, the circuit court held that the nursing home project was a capital project for an industrial or manufacturing plant within the intendment of article VII, section 10(c), Florida Constitution. The circuit court held further that even if the project were not deemed to be an industrial or manufacturing plant, it was nonetheless constitutionally authorized because it served a paramount public purpose and provided only incidental benefit to a private corporation.
As framed by the parties,[2] the sole issues for our consideration are whether the proposed nursing home project is an industrial or manufacturing plant under article VII, section 10(c), and alternatively, whether the project is permissible because it serves a paramount public purpose. Because we answer the second inquiry in the affirmative, we need not determine whether a nursing home project comes within the definition of "industrial or manufacturing plants."
Article VII, section 10(c) of the Florida Constitution authorizes the issuance and sale by a county of revenue bonds to finance the cost of certain enumerated projects, among them being "industrial or manufacturing plants." But this constitutional provision does not comprise the sole authority for the issuance of public revenue bonds. Other projects not specifically enumerated in section 10(c) may validly be financed by public revenue bonds if the bonds do not contemplate a pledge of credit of the state or of a county and if the projects serve a paramount public purpose. Wald v. Sarasota County Health Facilities Authority, 360 So.2d 763 (Fla. 1978); Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla. 1971).
The proposed nursing home facility in this case fits well within this latter category of projects validly financed by public revenue bonds. The parties concede that the bonds in no way pledge the credit of the state or of Leon County. With regard to the question whether the project serves a public purpose, the legislature specifically found in section 159.26 of chapter 159 that health care industries are vital to the economy of the state and the welfare of the people and need to be enhanced and expanded. Such a legislative declaration is entitled to great weight. Wald, 360 So.2d at 770; Nohrr, 247 So.2d at 309. Indeed, we have noted previously that "the provision of adequate health care facilities fosters the health, safety and welfare of the citizens of this State and, therefore, serves a paramount public purpose." Wald, 360 So.2d at 770.
Appellant attempts to rebut the declared public purpose of this nursing home project by reading our decision in Wald to hold that the not-for-profit status of the health facility there in issue was the key factor in our finding of a paramount public purpose. The argument misses the mark. The not-for-profit status of the facility in Wald was important only because at the time, chapter 154 permitted the issuance of revenue bonds only for the acquisition of a "health facility," and a "health facility" was definitionally restricted to "any private corporation organized not for profit." § 154.205(8), Fla. Stat. (1975). Because the definition of "health care facility" now encompasses for-profit corporations, this aspect of Wald is of no help to appellant.
Accordingly, the order of the Circuit Court for Leon County is affirmed.
It is so ordered.
*952 ADKINS, BOYD, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] Chapter 80-287, codified as section 159.27(16), Floridab Statutes (Supp. 1980), included "health-care facility" within the definition of "project" as follows:

(16) "Health-care facility" means property operated in the private sector, other than by not-for-profit organizations, used for or useful in connection with the diagnosis, treatment, therapy, rehabilitation, or care of or for sick, ill, injured, infirm, impaired, disabled or handicapped persons, without discrimination among such persons due to race, religion, or national origin, or for the prevention, detection, and control of disease, including, without limitation thereto, hospital, clinic, emergency, out-patient, intermediate care, including but not limited to facilities for the elderly such as adult congregate living facilities, day care and share a home facilities, nursing home... .
[2] All parties concede the validity of the technical and procedural aspects of the proceedings below.