Mr. E. J. Yelton Executive Director State Board of Administration 1230 Blountstown Highway Post Office Drawer 5318 Tallahassee, Florida 32314-0063
Dear Mr. Yelton:
This is in response to your request for an opinion on substantially the following question:
 MAY THE STATE BOARD OF ADMINISTRATION ADOPT A DIVESTITURE RULE RESTRICTING INVESTMENTS OF THE FLORIDA PENSION FUND IN THE REPUBLIC OF SOUTH AFRICA IN ORDER TO FULLY EXERCISE THE POWERS GRANTED BY THE LEGISLATURE TO THE BOARD CONCERNING THE INVESTMENT OF THE SYSTEM TRUST FUND?
Your inquiry notes that the State Board of Administration (hereinafter `Board') has received a Petition to Initiate Rulemaking which urges the Board to institute rulemaking proceedings and to consider adoption of a divestiture rule.
Under the proposed rule, the State of Florida Pension Fund, 1) upon the effective date of the rule no longer would invest any funds in any bank, financial institution or firm which directly or through its subsidiaries has more than five percent (5%) of its funds invested in the Republic of South Africa or its instrumentalities and no assets would remain invested in the stocks, securities, or other obligations of any company doing business in or with the Republic of South Africa, and 2) within six (6) months of the rule's adoption would divest itself of any investments in any bank, financial institution or firm which directly or through its subsidiaries has more than five percent (5%) of its funds invested in the Republic of South Africa or its instrumentalities unless said bank, financial institution or firm agrees to follow the `Sullivan Principles' of employee treatment.[1]
In support of their petition to initiate rulemaking, petitioners state their moral opposition to the government of South Africa and their belief that `[t]he political instability created by the maintenance of apartheid makes investment in that country very risky and perhaps even imprudent.' Both the Board and the petitioners recognize that the significant, underlying legal issue in this matter involves the authority, vel non, of the Board to adopt such a rule in view of the constitutional and statutory framework within which the Board must operate.
Initially, I would emphasize that it is for the Board to as certain, in the first instance, whether its statutory duties in management of the System Trust Fund allow application of such a divestiture and investment policy in a particular situation as part of its duties pursuant to s 215.47(7). Attorney General Opinion 74-257 (concluding that the duty and responsibility of investment decisions resides in the Board, citing s 215.47, and that such decisions must remain within the discretion of the Board and be handled in the best interests of the state). See, s215.44(1) (discussing the obligation of the Board to invest such funds consistent with the cash requirements, trust agreement and investment objectives of the fund); s 215.44(2)(a) (duty to see that such funds handled in the best interests of state); s 215.47
(outlining permissible investments and providing in subsection [7] thereof that investments shall be designed to maximize return consistent with risks, and to preserve an appropriate diversification of the portfolio).
Section 9, Art. XII, State Const., by reference to s 16, Art. IX, of the 1885 Constitution, recognizes the creation of the State Board of Administration, composed of the Governor, the State Treasurer, and the State Comptroller, as a body corporate. Section 16(b) states that, in addition to management responsibilities over the Second Gas Tax, the Board `shall have . . . such powers as maybe conferred upon it by law. . . .' (e.s.) Section 16(d) additionally provides that the Board `shall have the power to make and enforce all rules and regulations necessary to the full exercise of the powers hereby granted. . . .' (e.s.) Section 9(c)(5) of the State Constitution continues the existence of the Board as `a body corporate for the life of this subsection 9(c).' See also, s 20.28, F.S., providing that the State Board of Administration continued by s 9, Art. XII, State Const., `retains all of its powers, duties, and functions as prescribed by law.'
The substantive powers of the Board which are the subject of your inquiry appear to be derived solely from statutory law. See, AGO 76-158. Pursuant to s 121.151, F.S., the Board is required to `invest and reinvest available funds of the [Florida Retirement] System Trust Fund in accordance with the provisions of ss.215.44-215.53.' (e.s.) See, s 121.021(36) defining `System Trust Fund.'
Section 215.44(1), (2) and (3) expressly provides:
 (1) Except when otherwise specifically provided by the State Constitution and subject to any limitations of the trust agreement relating to a trust fund, the Board of Administration, hereinafter sometimes referred to as `board,' composed of the Governor as chairman, the Treasurer, and the Comptroller, shall invest all the funds in the System Trust Fund, as defined in s. 121.021(36), and all other funds specifically required by law to be invested by the board pursuant to ss. 215.44-215.53 to the fullest extent that is consistent with the cash requirements, trust agreement, and investment objectives of the fund.
 (2)(a) The board shall have the power to make purchases, sales, exchanges, investments, and reinvestments for and on behalf of the funds referred to in subsection (1), and it shall be the duty of the board to see that moneys invested under the provisions of ss. 215.44-215.53 are at all times handled in the best interests of the state. (b) In exercising investment authority pursuant to s. 215.47, the board may retain investment advisers or managers, or both, external to in-house staff, to assist the board in carrying out the power specified in paragraph (a).
 (3) Notwithstanding any law to the contrary, all investments made by the State Board of Administration pursuant to ss. 215.44-215.53 shall be subject to the restrictions and limitations contained in s. 215.47.
(e.s.)
Thus, any investment of monies in the System Trust Fund must be considered subject to and controlled by the restrictions, limitations, and criteria contained in s 215.47. That statute enumerates the permissible investment modes of such funds, and specifies the maximum permissible percentage of such funds which can be put in one category of investment. See, subsections (1), (2), (3) and (4) of s 215.47, F.S. (1984 Supp.), as amended by Chs. 84-137 and 84-166, Laws of Florida. Additionally, subsection (7) of s 215.47 stipulates that
 Investments made by the State Board of Administration shall be designed to maximize the financial return to the fund consistent with the risks incumbent in each investment and shall be designed to preserve an appropriate diversification of the portfolio. (e.s.)
Thus, yield, risk, and diversification have been identified by the Legislature as the appropriate criteria to be used in making investment decisions. Section 215.52 provides that the Board shall have the power and authority to make reasonable rules and regulations necessary to carry out the provisions of ss215.44-215.53.
Nothing in ss 215.44-215.53 appears to authorize the State Board of Administration to adopt a divestiture rule based on ethical iedals or standards; more specifically nothing in s 215.47, as amended, provides for or establishes ethical standards or principles as a separate consideration to be used by the board in making investment decisions. In the absence of legislation authorizing the board to consider such factors, it appears that the decision of the Board to invest would be controlled by a consideration of the criteria contained in s 215.47 — yield, risk and diversification. See, AGO 74-257 (noting that where there is doubt about the existence of a statutory power possessed by the Board, then it cannot be exercised). See also, AGO 74-250, citing Nohrr v. Brevard County Educational Facilities Authority,247 So.2d 304 (Fla. 1971); State ex rel. Burr v. Jacksonville Terminal Co., 71 So. 474 (Fla. 1916); State v. Atlantic Coast Line R. Co.,47 So. 969 (Fla. 1908). And see, s 120,54(1) and (7), F.S. (1984 Supp.); General Telephone Co. of Florida v. Florida Public Service Commission, 446 So.2d 1063 (Fla. 1984); Great Am. Banks v. Div. of Admin., Etc., 412 So.2d 373 (1 D.C.A. Fla., 1981); State, Dept. of Ins. v. Ins. Ser. Office, 434 So.2d 908 (1 D.C.A. Fla., 1983), holding, respectively, that (1) under Public Service Commission statute similar to s 215.52, a rule would be sustained if reasonably related to purposes of enabling legislation, (2) rulemaking cannot be used to make legal that which there was no authority to do in the first place and (3) rule adopted under a similarly worded statute of the Dept. of Insurance was invalid since it extended or conflicted with applicable statutes. Application of these criteria to any particular investment involves the exercise of judgment by expert financial and investment counselors, and, in the final analysis, is not a legal question. See, s 215.44(2)(b) and 215.444(1); see also, AGO 74-257, discussed supra, stating that any investment decision must remain within the discretion of the Board of Administration and be `handled in the best interests of the state.' Thus, in judging a particular investment, it appears that the Board has the discretion to determine that the political status of a particular government creates undue risks for funds invested within the territory of that government and may curtail those investments when it perceives that risk factors outweigh the other factors specified in s 215.47(7).
In summary, until legislatively or judicially determined otherwise, it is my opinion that adoption by the State Board of Administration of a divestiture rule based on ethical ideals or principles would not appear authorized in light of the Board's statutory duties under ss 215.44-215.53, F.S., and specifically s215.47, F.S., as amended. Application of the statutory criteria of yield, risk and diversification to any particular investment is confined to the discretion of the Board on a case-by-case basis, involves the exercise of judgment by expert investment counselors, and is not a legal question. Thus, the Board has discretion to order divestiture of particular investments which it perceives as imprudent or involving undue risk by virtue of their situs in politically unstable world regions or nations.
Sincerely,
Jim Smith Attorney General
Prepared by:
Anne Curtis Terry Assistant Attorney General
[1] The `Sullivan Principles' of employee treatment, a sixpoint code of corporate conduct for non-segregation and fair employment practices, were designed by the Reverend Leon Sullivan in 1977 and concentrate on corporate employers' treatment of employees. See, Newsletter, Council on Economic Priorities, Dec. 1983, pp. 2, 5; see also, Newsweek, March 11, 1985, p. 31, `Dealing with Apartheid.'