Mr. Daniel P. Fernandez General Counsel Southwest Florida Water Management District 2379 Broad Street Brooksville, Florida 34609-6899
Dear Mr. Fernandez:
You ask substantially the following question:
 May the Southwest Florida Water Management District enter into an agreement with a nonprofit corporation for the lease-purchase of a building without creating a security interest violative of s. 12, Art. VII, State Const.?
In sum, I am of the following opinion:
 The Southwest Florida Water Management District may enter into a lease-purchase agreement with a nonprofit corporation without violating s. 12, Art. VII, State Const., as an indirect pledge of the district's ad valorem taxing power, since the agreement precludes repossession by the lessor of the building covered by the agreement.
You have indicated in subsequent communication with this office that a nonprofit corporation would be formed by a group of individuals acting in their individual capacities and the district will not be an organizer or member of the corporation. Title to the building will at all times be vested in the district after entering into the agreement.
The proposed agreement provides that the contractual obligation of the district for the annual rental payments shall not be an indebtedness of the district.[1] Furthermore, should the district fail to budget sufficient funds for a given fiscal year to make all of the required lease-purchase payments, the lease-purchase agreement will terminate the last day of said fiscal year.[2] In the event the agreement is terminated, the district, at its option, may transfer title by quitclaim deed to the corporation and immediately deliver possession.[3]
Should the district elect to maintain possession of the building, the corporation's only remedy would be to seek a judgment against the district for the remaining balance due under the lease-purchase agreement.[4] The lease-purchase agreement, however, does not result in the creation of any lien, security interest or encumbrance upon any assets of the district.[5]
The agreement further provides in s. (7), notwithstanding the district's option to immediately transfer title and possession of the building
 (a) there is no intention to create a right in the corporation to involuntarily dispossess the District of title to or use of the building or fixtures,
 (b) the sole remedy of the corporation for failure of the District to observe its covenant to voluntarily transfer title to and possession of the building to the corporation upon an event of nonappropriation is to sue for compensatory damages calculated in a manner to be set forth in the lease-purchase agreement, and
 (c) the corporation shall waive any right to specific performance of the District's covenant to transfer title to and possession of the building and fixtures to the corporation upon an event of non-appropriation.[6]
Upon termination of the lease, for any reason, the proposed agreement provides that "the District will be required to transfer possession of, and title to, the building and fixtures to the corporation."[7] If the district fails to deliver possession, however, the corporation's sole remedy will be to seek a judgment against the district for the unpaid balance due under the lease-purchase agreement.[8]
In AGO 80-9, this office concluded that a municipality was not authorized to finance the purchase of a computer under a lease-purchase agreement granting a security interest in the equipment with an accompanying right of foreclosure or other remedy to enforce the performance of the city's obligation. Since the agreement considered in that opinion authorized the lessor to repossess and sell the equipment upon the default of the city, this office determined that a "security interest" had been created in the equipment. The security interest could result in the city being coerced into levying ad valorem taxes to avoid loss of the equipment; leading this office to conclude that such a contractual financing arrangement constituted an indirect pledge of the city's ad valorem taxing power requiring approval by the electors of the city pursuant to s. 12, Art. VII, State Const.[9]
This office has consistently cautioned that no lien or security interest in the equipment or property of a governmental entity may be given nor may ad valorem tax revenues be pledged for obligations exceeding twelve months unless approved by a vote of the electors therein.[10]
In an Informal Opinion to Mr. Lloyd A. Soughers, May 23, 1988, this office considered whether a school board could obtain equipment under a lease-purchase agreement similar to the one you propose without violating s. 12, Art. VII, State Const. Just as in your proposed agreement, the agreement in that opinion provided for the voluntary return or transfer of the equipment in the event of specified conditions which would terminate the lease-purchase agreement. If the school board did not return the equipment, however, the lessor was limited to a suit for compensatory damages and could not sue for specific performance of the covenant to return the property. This office concluded that such a lease-purchase agreement would not result in an indirect pledge of the credit of the school board in that the board could not be coerced to levy ad valorem taxes in order to avoid loss of the equipment and the lessor's only course of action in the event of a default was an action for damages.
While the proposed lease-purchase agreement by the district provides for a voluntary return of possession of the building back to the nonprofit corporation upon the conditions specified therein, the only contractual remedy the corporation has in the event the district does not relinquish possession is to sue for compensatory damages.[11] Likewise, the corporation has no right to seek specific performance of the district's covenant to return possession and title of the building.[12] To avoid confusion, however, it may be advisable to delete the provision requiring transfer of possession of the building upon termination of the lease, since the transfer is voluntary.
Based upon the foregoing, it is my opinion that the proposed lease-purchase agreement by the Southwest Florida Water Management District does not constitute an indirect pledge of the district's credit, since the agreement limits the lessor's recourse to a suit for damages if the district defaults and the district cannot be coerced into exercising its ad valorem taxing authority to satisfy the debt and avoid losing possession of the building.
Sincerely,
Robert A. Butterworth Attorney General
(ls)
[1] Section (1), proposed Building Lease-Purchase Agreement.
[2] Section (2), supra.
[3] Section (3), supra.
[4] Section (6), supra.
[5] Section (4), supra.
[6] Section (7), supra.
[7] Section (8), supra, as amended by subsequent communication.
[8] Id.
[9] Section 12, Art. VII, State Const., provides that: Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only; (a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; or
 (b) to refund outstanding bonds and interest and redemption premium thereon at a lower net average interest cost rate. Cf., Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla. 1971) (revenue bonds secured by a mortgage on the physical properties to be financed could not be issued by public bodies unless approved at an election) and AGO's 76-121 and 73-164 (deferred payment plan created a conditional indebtedness on the part of the local governmental entity in the nature of a legal liability for a capital venture predicated upon the general credit; the plan placed the local governmental entity in a position of being coerced into levying a tax in order to prevent the loss of the property by foreclosure and was not permissible without an approving referendum).
[10] See, AGO 80-25 (no lien or security interest in a county's property may be given, nor may ad valorem tax revenues be pledged unless approved by county voters in a referendum). Cf., AGO 78-110 (municipality may pledge nonad valorem tax revenues, if available and not previously encumbered, to purchase personal property, but may not, in the absence of an approving referendum, finance the purchase of such property by borrowing money and giving a lien or mortgage on the property to be purchased as further or additional security for the loan).
[11] Section (7)(b), proposed Building Lease-Purchase Agreement.
[12] See, s. (7)(c), supra.