Mr. George T. Dunlap, III City Attorney City of Bartow Post Office Box 30 Bartow, Florida 33830
Dear Mr. Dunlap:
You have asked substantially the following question:
May the City of Bartow allow private persons to use the municipal golf course and bill for such use on a monthly basis pursuant to an agreement, without violating s. 10, Art. VII, State Const.?
In sum, I am of the following opinion:
The City of Bartow pursuant to its home rule powers may authorize the use of the municipal golf course by private persons and require payment of the charges for the greens fees for such persons at the end of each month without violating s. 10, Art. VII, State Const. You state that the City of Bartow has an agreement with a local motel to allow a certain number of the motel's guests to play golf on a daily basis at the municipal golf course. For this privilege, the motel pays in advance an annual greens fee. If more than the agreed number of motel guests play on a particular day, the motel is billed at the end of the month a regular greens fee for the additional players. A similar agreement exists between the city and a local private golf club allowing the private club's members to use the municipal course.
Without knowledge of the terms of the contract, no comment will be made regarding the agreement between the City of Bartow and the private golf club. It must be assumed, however, that the municipal golf course is open to the public at large at all times and that the agreement between the city and the motel does not afford the motel's guests special privileges over those allowed the general public.
You ask whether permitting the payment of the greens fees for the additional players at the end of the month constitutes "giving, lending or use of [the city's] taxing power or credit to aid any person" prohibited by s. 10, Art. VII, State Const.
Section 10, Art. VII, State Const., provides in part:
Neither the state nor any . . . municipality . . . or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person . . . .
In cases interpreting this constitutional provision the courts have found that its purpose is "to keep the State out of private business; to insulate State funds against loans to individual corporations or associations and to withhold the State's credit from entanglement in private enterprise."[1] In determining whether the public credit has been loaned, used, or given, the courts have generally stated that the public entity must be either directly or contingently liable to pay something to someone.[2]
In AGO 82-42, this office considered whether s. 10, Art. VII, State Const., prohibited a municipality from taking back a purchase money mortgage when selling surplus municipal property. This office concluded that the taking back of a mortgage was not a loan or use of the municipality's credit contemplated by s. 10, Art. VII, provided there was no assumption by the city either directly or indirectly to pay the debt of a third party nor any public property was placed in jeopardy by the default of such party.
Similarly, in AGO 82-58, this office concluded that a school board could lawfully sell surplus school property by accepting partial payment of the purchase price and deferring payment of the balance of the purchase price on an installment money mortgage. In such a situation, however, the school board would have to determine that disposal of the surplus property was in the best interest of the public and education and no new financial obligation would be placed upon the school board.[3]
More recently, in AGO 90-16, this office found that a municipality, pursuant to its home rule powers,[4] could adopt a plan authorizing water and sewer customers to pay impact fees in several payments with interest added, without violating s. 10, Art. VII, State Const. The opinion recognized that funds expended by a municipality for the expansion of the water and sewer system are for a public, not a private, purpose. It was further noted that the authority of the State Legislature, or a municipal corporation when authorized by statute or charter, to provide for the payment of assessments in installments and to attach reasonable conditions to such payments has generally been recognized.[5]
It does not appear that the City of Bartow has made itself liable to pay anything to anyone by allowing the additional fees to be paid at the end of each month. Nor has public property been put in jeopardy by such a plan. In the event the greens fees are not paid, the motel is liable for such fees under the contractual terms of the agreement.
In light of the above, it is my opinion that under the circumstances herein the City of Bartow, pursuant to its home rule powers, may implement a plan whereby greens fees for private persons using the municipal golf course may be paid at the end of each month without violating s. 10, Art. VII, State Const.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Dade County, Board of Public Instruction v. Michigan Mutual Liability Company, 174 So.2d 3, 5-6 (Fla. 1965). And see, Bailey v. City of Tampa, 111 So. 119, 120 (Fla. 1926), discussing the rational for adoption of s. 10, Art. IX, State Const. (1885), the predecessor provision to s. 10, Art. VII, State Const. 
[2] See, Wald v. Sarasota County Health Facilities Authority,360 So.2d 763, 768 (Fla. 1978) (word "credit" as used in s. 10, Art. VII, State Const., implies the imposition of some new financial liability upon the state or political subdivision which results in the creation of a State or political subdivision debt for the benefit of private enterprise) and State v. Housing Finance Authority of Polk County, 376 So.2d 1158, 1160 (Fla. 1979) (lending of credit means the assumption by the public body of some degree of direct or indirect obligation to pay the debt of the third party; where there is no such undertaking by the public body to pay the obligation from public funds and no public property is placed in jeopardy by default of the third party, there is no lending of public credit).
[3] Cf., AGO 77-120, in which this office concluded that explicit statutory authority is necessary to extend credit for the payment of fees collected by a public officer, when the statute mandates how the fees are to be collected. In the instant inquiry, however, the city collects fees pursuant to its home rule powers.
[4] See, s. 2(b), Art. VIII, State Const., as implemented by the Municipal Home Rule Powers Act, Ch. 166, F.S., allowing the governing body of a municipality to enact legislation on any subject matter upon which the State Legislature may act, with the exception of certain subjects not applicable here.
[5] 63 C.J.S. Municipal Corporations s. 1573. Cf., City of Orlando v. Northern Investment Corporation, 156 So. 890 (Fla. 1934), in which the Court considered whether all sewer and paving assessment installment payments had matured upon the defendant's default on some payments, regardless of whether the city had claimed acceleration.